CENTURY HOLDING COMPANY, Respondent, *v.* THE EBLING BREWING COMPANY, Appellant,

(Supreme Court, Appellate Term, First Department, January, 1917.)

Assignment — of lease as collateral security for payment of chattel mortgage — landlord and tenant — evidence — trial.

Where a tenant, as collateral security for the payment of a mortgage upon certain fixtures in the leased premises, assigns the lease to the mortgagee, who lawfully enters into the premises by virtue of the assignment, the assignee after entry has a legal right to the possession during the term of the lease subject only to the right of the original tenant to redeem.

In such case, the assignee's possession of the premises is neither that of a trespasser nor a subtenant, and so far as the landlord is concerned the assignee is in lawful possession of the estate of his assignor, the original tenant, by virtue of the assignment, and by his own acts a privity of estate between him and the landlord is created, and so long as it continues he is liable for the rent of the premises until he divests himself of his estate by an assignment of his interest in the lease to a third party.

The judgment in an action for rent against defendant as assignee of the lease reversed and a new trial ordered, on the ground that he had broken the privity of estate by assigning his interest in the premises to a third party, though the jury had found upon insufficient evidence that the assignment was only colorable and that defendant still maintained control and possession of the premises.

WHITAKER, J., dissents.

APPEAL from a judgment of the City Court of the city of New York in favor of the plaintiff and against the defendant, rendered upon the verdict of a jury.

Eugene Cohn (Abraham S. Gilbert and Eugene Cohn, of counsel), for appellant.

Aronson & Salant (Louis Salant, of counsel), for respondent.

Lehman, J.    The plaintiff herein has recovered a judgment against the defendant as the assignee of a lease made by it to one Max Schultz. The defendant denied the allegation of the complaint that it was the assignee of the lease and also alleged affirmatively that its sole interest in the lease was that of a mortgagee and that it had parted with this interest before the rent, for which this action is brought, became due.

It appears that on August 20, 1913, the plaintiff leased premises known as 1139 Walker avenue to Max Schultz for a term of five years. The defendant at that time owned a chattel mortgage on the bar fixtures contained in the premises. Schultz apparently assumed payment of the amount of this chattel mortgage and the defendant loaned him some further money to make repairs and pay the rent for the month of January, 1914, as called for by the lease, which contained a provision that the tenant should enjoy the premises rent free until that time. On the same day that Schultz received the lease he executed and delivered a note to the defendant for the sum of $3,150.70 and simultaneously executed and delivered to the defendant an assignment of the lease '' as collateral security to a note for $3,150.70.'' Schultz thereafter entered into possession of the premises but after 'a few days abandoned them. The defendant thereupon sent a watchman to the premises where the bar fixtures on which it had a chattel mortgage still remained. Thereafter, according to the testimony produced by the plaintiff, the defendant leased the abandoned premises to several successive parties who occupied them until April sixteenth, and the defendant paid the rent by its own checks for the months of February and March, 1914. There is no question in my mind that the testimony produced by the plaintiff on this point is amply sufficient to allow the jury to find that the defendant

Supreme Court, Appellate Term, January, 1917. [Vol. 98.

entered into the occupation of the premises and exercised complete dominion over them by virtue of the collateral assignment made by Schultz. It is true that this testimony is to some extent contradicted and to some extent explained by the defendant, but the verdict of the jury has conclusively established that the defendant did take possession of the premises after the original tenant abandoned them. The defendant claims, however, that even though the defendant did take possession under the collateral assignment he never obtained legal title to the lease and consequently no privity of estate ever arose between the landlord and himself.

Neither party has cited any case where this question has been directly and necessarily decided by the courts of this state, at least since the time when this state definitely adopted the rule that a mortgage of real property transfers no legal title to the mortgagee. Apparently, however, the text book writers have assumed that a mortgagee of a lease who takes possession of the leased premises is liable as an assignee of the lease and this court has in at least two opinions assumed the correctness of the same rule. In the case of *Levy* v. *Long Island Brewery,* 26 Misc. Rep. 410, this court, per Leventritt, J., stated: " In the case at bar the assignment of the lease was expressly stated to be made ' as collateral security ' for the payment of the loan made by the defendant to Silverman. The plaintiff to recover must, therefore, show that the defendant entered into actual possession of the premises." The court in that case held that there was no evidence that the defendant did enter into possession of the premises but it did not dismiss the complaint and its statement of the law was evidently intended to be binding upon the court below on a new trial. In the subsequent case of *Staudt* v. *Everard's Breweries,* 70 Misc. Rep. 544,

this court in an opinion written by myself, again announced the same rule in unqualified terms, stating: "If the defendant entered into the actual occupation of the premises and assumed control of the fixtures under the terms of the chattel mortgage, as owner of the chattels therein assigned, then it must be considered the owner of the lease, and the relation of landlord to the assignee of the lease in actual occupation of the premises creates a privity of estate and summary proceedings will lie.· In other words, it is immaterial whether or not the assignment of a lease in a chattel mortgage vests title to the lease in the mortgagee before he takes possession under the chattel mortgage, because actual occupation by an assignee is in any event necessary to create the relation of landlord and tenant; and such occupation would, even without foreclosure, vest title in the mortgagee." In that case also the court, however, found that the mortgagee had not actually taken possession of the premises. The defendant now claims that both of these cases rest upon the authority of the case of *Astor* v. *Hoyt*, 5 Wend. 605, and other cases and that these cases have been overruled by subsequent decisions of the Court of Appeals and especially by the case of *Trimm* v. *Marsh*, 54 N. Y. 599. In the case of *Astor* v. *Hoyt*, 5 Wend. 605, the court decided that a mortgagee of a term does not become liable as an assignee unless he takes possession, "But if a mortgagee takes possession of the mortgaged premises lawfully, he must be then considered assignee, and the assignee must take the estate *cum onere*. When the mortgagee takes possession, he then has all the right, title and interest of the mortgagor; then he acquires and the mortgagor loses an estate liable to be sold on execution. He is therefore substituted in the place of the mortgagor, who was lessee, and therefore is assignee and liable as such." I have found no

case which squarely overrules this case so far as it applies to mortgages of chattels real, such as a lease, but the case of *Trimm* v. *Marsh, supra,* does squarely hold that no such rule applies to a mortgage of the fee of real estate. In that case the court not only held that a mortgagor of real estate had, even after the mortgagee went into possession, an '' estate liable to be sold on execution,'' but the court expressly stated: '' How can the mere possession change the title from the mortgagor to the mortgagee, or in any way diminish the estate of the one or enlarge the estate of the other? Before taking possession the mortgagee had a mere lien upon the real estate pledged for the security of his debt. After possession he has in his possession the property pledged as his security, the title remaining as it was before.'' While perhaps that case overrules the statement contained in the case of *Astor* v. *Hoyt,* that '' when the mortgagee takes possession he then has all the right, title and interest of the mortgagor; then he acquires and the mortgagor loses an estate liable to be sold on execution,'' that question need not be decided by us for it is not determinative of the real question before us, viz., whether a person who receives an assignment of a lease as collateral does not, by operation of law, become the landlord's tenant when he assumes possession of the premises under his collateral assignment. He does become liable as assignee if there is a privity of estate between himself and the landlord and that privity exists where he enters possession under a lease in place of the original tenant. There may be a privity of estate between the landlord and a new tenant even though the original tenant may retain certain rights as between himself and the new tenants.

This distinction is clearly pointed out in the case of *Stewart* v. *Long Island R. R. Co.,* 102 N. Y. 601. In

that case the court stated: " Where a lessee of land leases the same land to a third party, the question has often arisen whether the second lease is in legal effect an assignment of the original lease, or a mere sub-lease. The question has frequently, and probably most generally, arisen between the lessee and his transferee, and much confusion will be avoided by observing the distinction between those cases, and cases where the question has been between the transferee and the original landlord. In the latter class of cases the rule is well settled that if the lessee parts with his whole term or interest as lessee, or makes a lease for a period exceeding his whole term, it will, as to the landlord, amount to an assignment of the lease, and the essence of the instrument as an assignment, so far· as the original lessor is concerned, will not be destroyed by its reserving a new rent to the assignor with a power of re-entering for non-payment, nor by its assuming, by the use of the word *demise* or otherwise, the character of a sub-lease; and the assignee, so long as he continues to hold the estate, is liable directly to the ·original lessor on all covenants in the original lease which run with the land, including the covenant to pay rent. (Taylor's Landl. & Ten. [7th ed.] 109; *Hicks* v. *Downing,* 1 Lord Raym. 99; *Palmer* v. *Edwards,* 1 Doug. 187; *Smith* v. *Mapleback,* 1 T. R. 441; *Porter* v. *French,* 9 Irish Law R. 514; *Parmenter* v. *Weber,* 8 Taunt. 593; *Doe* v. *Bateman,* 2 Barn. & Ald. 168; *Wallaston* v. *Hakewell,* 3 Scott N. R. 616; *Pluck* v. *Digges,* 5 Bligh [N. S.], 31; Beaumont v. *Marquis of Salisbury,* 19 Beav. 198; *Thorne* v. *Woolcombe,* 3 Barn. & Ald. 586.)

" But as between the *original lessee* and *his lessee* or transferee, even though the original lessee demises his whole term, if the parties intend a lease, the relation of landlord and tenant, as to all but strict reversionary rights, will arise between them.

'' The effect, therefore, of a demise by a lessee for a period equal to or exceeding his whole term is to divest him of any reversionary right and render his lessee liable, as assignee, to the original lessor, but at the same time the relation of landlord and tenant is created between the parties to the second demise, if they so intended.''

In the present case it seems to me unnecessary now to determine where, as between the assignor and the assignee of the lease, the legal title rests. It is clear that in any event the original tenant has assigned to the defendant his own lease as collateral. The defendant has entered lawfully into the premises by virtue of the assignment and after entry has a legal right to the possession of the ·original tenant's entire term subject only to the right of the original tenant to redeem. The defendant's possession is not that of trespasser nor that of a sub-tenant. So far as concerns the landlord, the defendant has taken over the rights of the original tenant under the lease, by virtue of a written assignment, and he is in lawful possession of the estate of the original tenant. He stands in the place of the original tenant and by virtue of the assignment and his own acts a privity of estate has been created between himself and the landlord. So long as that privity of estate continues he is liable to the landlord for the rent of the premises: It is true that probably since this privity of estate rests not only on the assignment as collateral security but on the acts of the assignee in taking possession, this privity of estate may be ended without a re-assignment in writing by relinquishing the possession to the original assignor or mortgagor. Until, however, the assignee divests himself of his estate by assigning his interest to a third party or by giving up the possession to the original tenant, he is liable for *rent* accruing during his pos-

session.   See *People* v. *German Bank,* 126 App. Div. 231.

In this case, however, I think that the judgment should be reversed because the defendant has broken the privity of estate by assigning his interest in the premises to a third party.   It is true that the jury has found that the assignment was only colorable and that the defendant still maintained control and possession of the premises but I do not find sufficient evidence in the record to justify this finding.   The defendant showed that when the plaintiff began to claim that the defendant was liable for rent as assignee of the lease the defendant executed and delivered to one Sudbrink an assignment of the lease together with the note for which the lease was security.   The .court charged the jury that they must decide whether " this assignment is colorable and fictitious, in other words, the question is whether it was or was not in reality an assignment; that is whether it was made in fact according to the intent of the parties only for the purpose of pretending that there was an assignment and with the intent in reality to leave the Ebling Brewing Company in possession and control of the premises."   At the defendant's request the trial justice further charged that " colorable assignment means not an assignment to avoid liability for rent, but that the assignor retained possession and that the assignment was made to conceal his possession.   In order therefore to hold the defendant liable in the face of the assignment to Sudbrink, the jury must find that when the defendant delivered the said assignment to Sudbrink, it did not intend to accomplish an actual transfer of its interest in the demised premises but intended to retain such interest and to conceal the same by making Sudbrink the apparent owner."

The charge of the learned trial justice expresses, I

Supreme Court, Appellate Term, January, 1917. [Vol. 98.

think correctly, the law governing this branch of the case. See *Adams* v. *Koehler & Co.,* 136 App. Div: 623. I cannot, however, find any evidence in the record that the assignment to Sudbrink was colorable and made to conceal the defendant's possession.

Sudbrink at the time of the assignment was looking after the defendant's real estate under a weekly stipend for his services and the plaintiff claims that from this fact, coupled with the circumstance that Sudbrink never assumed possession of the premises while defendant's sub-tenant did remain in possession and the bar fixtures on which the defendant had a chattel mortgage were not removed till two months thereafter, the jury had a right to infer that the assignment to Sudbrink was a nullity. It seems to me that none of these circumstances lead to any inference that the assignment was fictitious. The defendant made this assignment to Sudbrink under advice of counsel after it realized that the landlord might try to hold it responsibile for the rent, and for the purpose of releasing itself from the burden of the lease. In the case of *Tate* v. *McCormick,* 23 Hun, 218, cited with approval in *Adams* v. *Koehler & Co., supra,* the court said: " The possession of an assignor after he has made an assignment may be a badge of fraud, but in the absence of evidence that the assignment was ineffectual to accomplish the transfer which it purported to make, such continued possession by the assignor does not destroy its legal effect. Nor is it material that the assignment was made solely for the purpose of ridding the assignor of the charge. He may assign to one who cannot be sued, to a beggar, or to one whom he has given a bonus to accept. the assignment. Such facts do not impeach the validity of an assignment."

In the present case the defendant was admittedly attempting to assign a lease which had been a burden

and not a benefit.  The assignment was admittedly sufficient in form to transfer to the assignee any interest the defendant may have had.  The continued possession of the premises by defendant's sub-tenant is in nowise inconsistent with the defendant's claim that the assignment was actually intended to transfer the defendant's estate in the premises.  The written assignment to Sudbrink did unquestionably, I think, transfer to him the defendant's estate unless the evidence shows that Sudbrink took and held title only as defendant's agent.  Sudbrink was, at the time, an employee of the defendant but that does not indicate that he took title only as a dummy and was really acting in this matter for the defendant.  The defendant may well have caused its employee to take over the burden of an unprofitable lease but there is no evidence which I think justified the jury in deciding that the employee took only as agent or dummy.  At most I think the testimony would raise a suspicion of bad faith and it may be that upon a second trial the plaintiff may be able to produce other testimony which will throw more light on the transaction.

Judgment should therefore be reversed and a new trial ordered, with costs to appellant to abide the event.

FINCH, J., concurs; WHITAKER, J., dissents.

Judgment reversed and new trial ordered, with costs to appellant to abide event.