CENTURY HOLDING COMPANY, Plaintiff, *v.* THE EBLING BREWING COMPANY, Defendant.

CENTURY HOLDING COMPANY, Plaintiff, *v.* THE EBLING BREWING COMPANY, Defendant.

First Department, December 6, 1918.

**Landlord and tenant — liability of assignee of lease in possession to landlord for rent — evidence insufficient to establish subsequent bona fide assignment by assignee — estoppel of assignee from denying possession prior to subsequent assignment — liability of mortgagee in possession for rent.**

A lessee of premises for saloon purposes assigned his lease to a brewing company as collateral security for the payment of a note. Thereafter said brewing company, which had a chattel mortgage upon the fixtures

and saloon equipment, took possession of the premises and also of the fixtures and equipment but claimed to have subsequently assigned the lease. *Held*, on all the evidence, that the brewing company actually occupied the position of an assignee of the original lease so as to render it liable to pay rent to the lessor;

That the subsequent assignment by the brewing company was made in bad faith to a mere agent or dummy and did not relieve it from liability for rent as it intended to continue in possession and control of the premises.

The assignee of a lease by virtue of privity of estate becomes liable to the lessor for rent, and such liability can only be avoided by a *bona fide* assignment of the lease or by a surrender thereof with the consent of the lessor.

The brewing company having taken possession of the lease and of the property covered thereby cannot be heard to say as against the lessor that prior to the alleged assignment it was not an assignee of the lease in possession.

A mortgagee who has actual possession of leased premises has a privity of estate with the landlord and is liable to pay rent.

MOTION in each case made by the defendant, The Ebling Brewing Company, for a new trial upon a case containing exceptions, ordered to be heard at the Appellate Division in the first instance, after the direction of verdicts in favor of the plaintiff by the court after certain specific questions had been submitted to the jury and answered by them.

The trial was had in the City Court of the City of New York.

*Louis Salant* of counsel [*Aronson & Salant*, attorneys], for the plaintiff.

*Abraham S. Gilbert* of counsel [*Eugene Cohn*, attorney], for the defendant.

MERRELL, J.:

These actions are to recover rent. On or about August 19, 1913, the premises in question, being 1139 Walker avenue, were leased by the plaintiff to one Max Schultz for a term of five years. The term commenced September 1, 1913, at a rental beginning at $100 a month. Certain repairs, however, were to be made by the lessee, and in consideration thereof no rent was to be charged for the first four months. For January, 1914, rent, however, was to be paid. The lease contained a further covenant that the same should not be assigned without the consent of the landlord to any one except to the defendant, The Ebling Brewing Company. Schultz

took possession of the premises on the following day and made a note payable to the defendant for the sum of $3,151.07, and as collateral security therefor assigned to said defendant his lease to the premises. It was also arranged between the defendant and Schultz that Schultz should buy beer from the defendant exclusively. Possession of the premises was taken by Schultz about the first of September and he remained only a few days, when the defendant took the keys and put its watchman in possession. The defendant then through its secretary, treasurer and general manager, Theodore Haebler, entered into negotiations with one Pelozo to take possession of the saloon and pay the defendant $100 a month rent therefor and to take beer from the defendant exclusively. The last-mentioned tenant remained in possession until about October eighteenth, when he was forcibly evicted by defendant's watchman and others in defendant's employ. The defendant in the meantime, however, had collected rent from the occupants of rooms above the saloon. After the eviction of Pelozo, defendant's watchman again took the keys and apparently had charge of the premises. Early in November the defendant made a new arrangement with two saloon keepers named Schmalzbach and Basler, which was similar to the former arrangements with the above-mentioned tenants, except that the new tenants deposited $200. These tenants continued in possession until some time in January, 1914, when Basler quit the business and left Schmalzbach alone, who continued to run the saloon until April 16, 1914. Apparently Schmalzbach paid to the defendant rent during all this time, as a settlement was had with him on April sixteenth, upon which date he gave to the defendant a note for the March rent and left the premises. The defendant then took the keys, and its watchman once more took possession. During all of this time the defendant had a chattel mortgage upon the fixtures and saloon equipment which were installed in said premises and which defendant left there until the latter part of May, 1914, when defendant sent its trucks to take the chattels out of the premises. At that time the watchman and the drivers of the trucks had the keys in their possession, and it does not appear that the keys were ever surrendered or transferred to the plaintiff since that date.

The period of free rent having expired, the defendant paid to the plaintiff the February and March rent, and on March twenty-eighth claims to have assigned all of its interest in the lease in question to one William Sudbrink, who was then also in the employ of the defendant and under the direct supervision of its manager, Haebler. Sudbrink appears to have attended to collections and other real estate matters of the defendant, and occasionally leases were made in his name.

Upon the last trial the following four questions were submitted to the jury, and answered as follows:

" 1. Did the defendant go into possession of the premises under the assignment executed by Mr. Schultz to the Ebling Brewing Company of his lease from the Century Holding Company? " to which the jury answered, " Yes."

" 2. Was the assignment to Mr. Sudbrink made in bad faith? That is, did the defendant notwithstanding the assignment to Mr. Sudbrink intend to continue in possession, dominion and control of the premises? " to which the jury answered, " Yes."

" 3. At the time of the execution of the assignment of the lease by the defendant to Mr. Sudbrink, did the representatives of the defendant assign and deliver to Mr. Sudbrink the promissory note of Mr. Schultz for which the lease of the premises from the Century Holding Company to Max Schultz had been assigned as collateral security? " to which the jury answered, " No."

" 4. Did the defendant's representatives deliver to Mr. Sudbrink the assignment of the lease from the Ebling Brewing Company to Mr. Sudbrink? " to which the jury answered, " Yes." ·

Thereupon the court directed a verdict in favor of the plaintiff and ordered that defendant's exceptions be heard in this court in the first instance.

It is plaintiff's contention that the defendant, having taken the assignment of the lease as collateral security, and having taken possession of the premises, became in law the assignee of the lease, and that, so far as the plaintiff is concerned, all of the rights of the original lessee passed to the defendant, thereby creating a privity of estate between the plaintiff and the defendant which gave to the plaintiff a right of action

against the defendant to recover the rent, and that the defendant could not avoid such liability by making an assignment to Mr. Sudbrink, defendant's employee.

It now seems to be the settled law of this State that the assignee of a lease, by virtue of privity of estate, becomes liable to the lessor for rent, and that such liability can only be avoided by a *bona fide* assignment of the lease or by a surrender thereof with the consent of the lessor. (*Seventy-eighth St. & Broadway Co.* v. *Purssell Mfg. Co.*, 166 App. Div. 684; *Stone* v. *Auerbach*, 133 id. 75; *Tate* v. *Neary*, 52 id. 78; *Tate* v. *McCormick*, 23 Hun, 218; *Frank* v. *N. Y., L. E. & W. R. R. Co.*, 122 N. Y. 197; *Dassori* v. *Zarek*, 71 App. Div. 538.)

The defendant, however, claims that the actual title to the lease never vested in it, and, therefore, no privity of estate existed so as to bind it to pay rent to the plaintiff, and that if the defendant ever did stand in the position of an assignee of the lease, it was relieved from all liability to pay rent by the assignment to Sudbrink.

The Appellate Term has twice decided that in the case at bar defendant occupied the position of an assignee of the lease and was, therefore, liable to pay rent to the plaintiff, unless the assignment to Sudbrink relieved defendant from such liability. Upon the first appeal (98 Misc. Rep. 226) the prevailing opinion of the Appellate Term held that the defendant, having entered lawfully into the premises by virtue of its assignment of the lease, stood in the place of the original tenant, and by virtue of the assignment and defendant's own acts a privity of estate has been created between defendant and the landlord, and that so long as such privity of estate continued the defendant was liable to pay rent to the landlord. This view was concurred in by a unanimous court. The Appellate Term, however, held, by a divided court, that there was not sufficient evidence to warrant a finding that Sudbrink took the title only as defendant's agent or dummy. Upon the second appeal the Appellate Term reached a result in accordance with that arrived at on the former appeal, except that the Appellate Term, on the second appeal, held that the plaintiff was entitled to go to the jury upon the question as to whether or not the note held by Schultz had ever been

delivered to Sudbrink, and granted a new trial. (167 N. Y. Supp. 52.) The exceptions taken to the verdict rendered in such new trial are those now under consideration. So that the questions to be determined are:

*First.* Did the defendant actually occupy the position of an assignee of the original lease so as to render it liable to pay rent to the plaintiff? and

*Second.* Was there sufficient evidence before the jury to warrant its special finding that the assignment to Sudbrink was in bad faith, and that the defendant, notwithstanding such assignment, intended to continue in possession, dominion and control of the premises?

It appears very clear that when the defendant, who was the owner and holder of the assignment of the lease as collateral security, took possession of the premises thereunder, as it had a right to do, it became the owner of the lease through the assignment, and that its right to such lease could not be questioned by any person, not even the assignor himself, except in an action in equity brought by the original lessee to redeem the lease. (*Barrett Mfg. Co.* v. *Van Ronk,* 212 N. Y. 90; *Cartier* v. *Pabst Brewing Co.,* 112 App. Div. 419.) In the last-mentioned case Mr. Justice MCLAUGHLIN in his opinion says: " When default occurred in the payment of the amount secured by the chattel mortgages, that moment the title to the property covered by them became absolute in the brewing company — the mortgagee. * * * After default the brewing company held the legal title and was the owner of the property. Neither the mortgagor * * * nor any of its creditors could thereafter maintain an action at law against it. All that remained to them was a mere naked equity of redemption which could only be enforced in an equitable action."

The assignment of the lease in question as collateral security, and the lease itself, were personal property of which the defendant had the right of possession, and having taken possession thereof and of the property covered thereby, cannot be heard to say, as against the plaintiff, that prior to the alleged assignment to Sudbrink it was not the assignee of the lease in possession. The above rule has often been applied to a mortgagee in possession. (*Tallman* v. *Bresler,* 65 Barb. 369; affd., 56 N. Y. 635; *Astor* v. *Hoyt,* 5 Wend. 603; *Walton* v.

*Cronly,* 14 id. 63; *Levy* v. *Long Island Brewery,* 26 Misc. Rep. 410; *Staudt* v. *Everard's Breweries,* 70 id. 544.) In the last-mentioned case, which is very much in point, the defendant holding a chattel mortgage and an assignment of a lease as collateral, it was said: " If the defendant entered into the actual occupation of the premises and assumed control of the fixtures under the terms of the chattel mortgage, as owner of the chattels therein assigned, then it must be considered the owner of the *lease,* and the relation of landlord to the assignee of the lease in actual occupation of the premises creates a privity of estate." In other words, a mortgagee who has actually taken possession of leased premises has a privity of estate with the landlord and is liable to pay the rent. (Underhill Landl. & Ten. § 653; Taylor Landl. & Ten. [9th ed.] §§ 451, 455; Thomas Mort. [3d ed.] § 165; Bell & Dunn Mort. 144.) Thomas on Mortgages (3d ed. § 165) states the rule thus: " And it is only where a mortgagee takes possession that he has the estate *cum onere* and becomes liable as assignee upon the covenants contained in the lease."

The defendant in the case at bar was at least a mortgagee of the lease. Default having been made, it took possession of the leased premises under its assignment, has never surrendered the lease with the consent of the lessor, and no redemption has been sought by the original lessee. The defendant, therefore, is clearly liable to pay plaintiff the rent unless the assignment to Sudbrink was sufficient to divest defendant of the whole title to the lease and thus terminate the privity of estate between plaintiff and defendant. Had defendant brought an action to foreclose its lien on the lease, a purchaser upon the sale would unquestionably have taken the whole title to the lease and would thereby have become liable to pay the rent. The defendant having elected to take possession, and the original lessee not having sought to redeem, the defendant, so far as the plaintiff is concerned, took the whole title to the lease.

Upon the second question herein to be determined, it appears that on the last trial the jury found that the assignment to Sudbrink was not made in good faith. Such finding was equivalent to a finding that Sudbrink was merely the agent or " dummy " of the defendant. The jury was war-

ranted, on the evidence, in making such a finding. While the Appellate Term upon the first appeal was of the opinion that there was not sufficient evidence then before the court to warrant such a finding, it appears that upon the second appeal the Appellate Term thought that the plaintiff was entitled to go to the jury upon the additional evidence concerning the delivery of the note to Sudbrink. This note was the very foundation of defendant's right to the lease, and it was to secure its payment that the assignment of the lease was given. The jury has found that such note was not delivered to Sudbrink. I think that the jury was warranted in so finding. Sudbrink was not called as a witness. Cohn, defendant's counsel, and Haebler, defendant's manager, testified on the last trial that the note was delivered; but Haebler, being confronted with his testimony on his examination before trial, admitted that upon such examination he stated that he did not remember that the note was so delivered. Upon the evidence, I do not think that the defendant ever intended to or did deliver the note to Sudbrink. This was no premier performance. It appears that defendant had taken other leases in the name of Sudbrink and that Sudbrink was under the orders of defendant's manager. It is unquestioned that defendant's tenant Schmalzbach remained in actual occupancy of the premises until April sixteenth, more than two weeks after the assignment to Sudbrink was given, and that on the adjustment of his account on that date he gave a note for the March rent to the defendant. Defendant's watchman was afterwards in charge, and so far as is disclosed in the evidence Sudbrink had nothing whatever to do with the premises at any time after the assignment to him of the lease. The defendant claims that even if Sudbrink had nothing to do with the premises after such assignment, even then the assignment was sufficient to relieve defendant of liability, for the reason that after such assignment there was no privity of estate between plaintiff and defendant. If, however, Sudbrink was the mere agent or dummy of the defendant, and if the defendant intended to remain in possession, keeping control of the property for saloon or other purposes, which assumptions are amply sustained by the evidence, it certainly cannot be said that there was any *bona fide* transfer of the lease to Sudbrink

First Department, December, 1918.   [Vol. 185.

which would relieve defendant from its liability to pay rent to the plaintiff. The circumstances surrounding the transfer of the lease are more than suspicious and were sufficient to warrant the jury in finding that Sudbrink was a mere agent or dummy of the defendant. If this be true, the defendant could not rid itself of liability by such assignment. (*Clark* v. *Aldrich*, 4 App. Div. 523; *Adams* v. *Koehler & Co.*, 136 id. 623.)

I am, therefore, of the opinion that the defendant is not entitled to a new trial, and that defendant's exceptions should be overruled, with costs, and judgment ordered in each case in favor of the plaintiff for the amount of the respective verdicts, with costs.

CLARKE, P. J., LAUGHLIN, DOWLING and PAGE, JJ., concurred.

Exceptions overruled, with costs, and judgment ordered in each case in favor of plaintiff for the amount of the respective verdicts, with costs. Order to be settled on notice.