## SMITH v. PICKFORD.
### No. 6477.

United States Court of Appeals for the
District of Columbia.
Decided July 20, 1936.

Edward F. Colladay and Joseph C. Mc-
Garraghy, both of Washington, D. C., for
appellant.

William C. Sullivan and Bates Warren,
both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and
ROBB, VAN ORSDEL, GRONER, and
STEPHENS, Associate Justices.

STEPHENS, Associate Justice.

This is an appeal from a judgment of
the Supreme Court of the District of Co-
lumbia in favor of Thomas H. Pickford,
plaintiff below, and against Walter Fletch-
er Smith, defendant below. The suit was
for rent.[1]  A jury was waived.

The case made for Pickford was this:
On April 30, 1919, Pickford leased the
Hotel Lafayette, located at 16th and I
Streets, N. W., in the District of Colum-
bia, to the Hotel Lafayette Company, a
Delaware corporation, for a term to com-
mence May 1, following, and to expire
April 30, 1931. On April 26, 1929, Pick-
ford executed with the same lessee a fur-
ther lease of the same premises for a term
of eight years to commence on May 1,
1931; the rental under this lease was
$2625 per month payable in advance on the
first day of each month. On October 24,
1929, the Hotel Lafayette Company, with
the consent of Pickford, assigned both leas-
es to Smith. Smith went into possession
and paid the rent as it came due to and in-
cluding June 1, 1932. But for the months
of July, August and September, 1932, the
rent, totaling $7875, remained unpaid.
This suit to recover that sum, together with
interest, was commenced by the plaintiff
September 26, 1932.

Smith in defense of this suit, asserted
that on June 1, 1932, he had assigned the
second of the leases above mentioned to the
Hotel Lafayette, Inc., a Maryland corpora-
tion, this with Pickford's written consent
given on August 9 following.[2]  The Hotel
Lafayette, Inc., intervened, itself set up the
assignment of the lease and asserted that
it, and not Smith, was liable for the rent
in question. In support of the defense, the
following was shown: The assignment in
question was, so far as is here material, in
these terms:

"Agreement

"This Agreement, made and entered in-
to this 1st day of June, 1932, by and be-

[1] This case was consolidated for trial
below and for argument here with case
No. 6476, Hotel Lafayette, Inc., et al. v.
Thomas H. Pickford et al., 66 App.D.C.
211, 85 F.(2d) 710, decided this day.
The record in each case was by all par-
ties offered in evidence in the other, and
was made a part of the bill of exceptions.
[2] There was some question as to wheth-
er this consent was delivered conditional-
ly, but in the view we take of the case,
this is immaterial. Also it was claimed
that sometime prior to September 22,
1932, Pickford received back the written
consent, and whether this constituted, le-
gally, a withdrawal was also made a
question in the case. But again in the
view we take, this is immaterial.

tween Walter Fletcher Smith, of the City of Washington, D. C. (hereinafter described as 'the Seller'), and Hotel Lafayette, Inc., a Maryland corporation, with principal offices at 16th & Eye Streets, N. W. (hereinafter described as 'the Purchaser'), witnesseth:

"I. The Seller hereby agrees to sell, assign and transfer to the Purchaser, and the Purchaser hereby agrees to buy, the hotel business conducted by the Seller at 16th & Eye Streets, N. W., in the City of Washington, D. C., known as the Hotel Lafayette as a going concern, together with its good will, and,

"(a) A certain lease being dated April 26th, 1929, made by Thomas H. Pickford to the Hotel Lafayette Company, and which has been assigned by the Hotel Lafayette Company to the Seller, to premises known as Lots numbered 9 and 10 in Square 200, in the City of Washington, D. C., together with the improvements thereon, consisting of a hotel building known as the Hotel Lafayette. The assignment of the lease is for all the rest of the term of said lease which expires on the 30th day of April, 1939, and said assignment is subject to the rents, covenants, conditions and provisions mentioned in said lease . . .

 * * * * * *

"Witness the signatures and seals of the above parties this 1st day of June, 1932.
"(Sgd.) Walter Fletcher Smith, [seal.]
"Hotel Lafayette, Inc.,
"(Sgd.) By Walter Fletcher Smith, [seal.]
     *"President.*
"(Sgd.) By Chester A. Bennett,
     *"Secretary."*

On December 21, 1929, there had been executed by Smith and two others, William G. Woodford and Thos. L. Lloyd, a certificate of incorporation of the Hotel Lafayette, Inc., as a Maryland corporation, and on the 27th of the same month, this certificate was received and approved by the State Tax Commission of Maryland. The certificate authorized the corporation to lease or otherwise acquire hotels and to operate the same, and it also provided that:

"The Corporation shall have three directors and Walter Fletcher Smith, William G. Woodford, and Harry R. Loveless shall act as such until the first annual meeting, or until their successors are duly chosen and qualified.

"The total amount of the authorized stock of the Corporation is one thousand

(1,000) shares, without par value, all of one class.

 * * * * * *

"The Board of Directors of the Corporation is hereby empowered to authorize the issuance from time to time of shares of its stock, without par value, for such consideration as said Board of Directors may deem advisable, subject to such limitations and restrictions, if any, as may be set forth in the By-Laws of the Corporation." A purported organization meeting of the Hotel Lafayette, Inc., was held September 9, 1932, in Washington, D. C. Present were Smith and one Chester A. Bennett, who was not one of the incorporators and not one of the directors above named. The minutes of the meeting state that the meeting was called to order by Smith who announced that a charter of incorporation had been secured under the laws of Maryland; and the minutes recite that on motion duly seconded a board of directors consisting of Smith, Bennett and Elwood H. Seal was selected; the minutes state also the unanimous adoption of a constitution and by-laws submitted by Smith. At the same time and place there was held a purported meeting of this board of directors. The minutes of this meeting state the presence of Smith and Bennett, and recite the election for the ensuing year of Smith as president, Seal as vice-president, and Bennett as secretary, and recite further the issuance of stock in the amount of 998 shares to Smith and 1 share each to Bennett and Seal. On September 21, 1932, there was held in Washington, D. C., a purported meeting of the stockholders. The minutes of this meeting show the presence of Smith, Bennett and Seal, but, according to Smith's testimony, there was actually present only Smith. The minutes recite the resignation of Bennett and Seal as members of the board of directors and the surrender of their stock certificates of 1 share each, and recite that President Smith selected T. R. Van Horn and Henry B. Hodgkins as officers and directors to succeed Bennett and Seal, and recite that after Bennett and Seal (who, as above noted, were not actually present) had retired from the meeting, President Smith called a stockholders meeting at which Smith, Van Horn and Hodgkins were present, representing 998 shares and 1 share and 1 share respectively. Apparently Van Horn and Hodgkins were present. The minutes then recite the election as directors for the ensuing year of Smith, Van Horn and

Hodgkins, and as officers of Smith, president, T. R. Van Horn, vice-president, and Henry B. Hodgkins, secretary and treasurer, "for the unexpired term." The minutes further recite instructions to the secretary to make arrangements with the Riggs National Bank to handle the funds of the company.[3] On September 22, 1932, there was a further purported meeting of the board of directors in Washington, D. C., at which were present, according to the minutes, Smith, Van Horn and Hodgkins. Smith and Hodgkins were actually present; whether Van Horn was is uncertain. The minutes show:

"The President states that consent for the transfer of the lease for the Hotel Lafayette from Walter Fletcher Smith, Proprietor, to the Hotel Lafayette, Inc., had been secured from the owner of Hotel Lafayette, Mr. T. H. Pickford, and the consent had been properly executed, signed, sealed and delivered on the ——— day of July, 1932, to Mr. Chester A. Bennett, one of the trustees under the lease, and that the consent to transfer the lease was then in Mr. Bennett's possession.

"Upon motion duly seconded and carried, it was unanimously agreed to accept the lease on behalf of the Hotel Lafayette, Inc.

"Upon motion duly seconded and carried it was agreed that Hotel Lafayette, Inc., assume all of the outstanding obligations of Walter Fletcher Smith, Proprietor of Hotel Lafayette, consisting of rent, open accounts, notes, etc., and also that Hotel Lafayette, Inc., take over all the assets of the said Walter Fletcher Smith, in keeping with the following notice which was sent out to all the creditors:

" 'Gentlemen:

" 'This is to notify you that a corporation known as the Hotel Lafayette, Inc., organized under the laws of the state of Maryland has contracted to purchase the assets of Walter Fletcher Smith, the present owner and operator of the hotel business situated at Sixteenth and I Streets, N. W., Washington, D. C., and known as the Hotel Lafayette.

" 'The corporation is assuming the lia-bilities of Smith arising from the operation of the hotel business, and is taking over all accounts and notes receivable of said business. The business will be continued under the management of Captain Smith, who is the president and treasurer of the corporation.

" 'This notice is sent in compliance with the Bulk Sales Act of the District of Columbia requiring that five days' notice of such transfer shall be given to each creditor.

" 'Yours very truly,
" 'Hotel Lafayette,
" '(S.)  Walter Fletcher Smith,
" 'Proprietor.' "

On October 7, 1932, an agreement evidenced by the following letter and acceptance was entered into between Pickford and Smith:

"Mr. Walter Fletcher Smith,
"Hotel Lafayette, Washington, D. C.
"Dear Sir:

"If you will turn over the Hotel Lafayette and the furnishings to me, I will furnish the money necessary to make repairs and advances for operating, and pay you $200.00 per month for your assistance in helping to operate the hotel, and we will take 60 days to sell the lease and furniture.

"I will have the payments on the notes (Secured on Furniture) extended, and when sale is made you are to receive all money from the sale of the furniture, after deducting all monies due me on rent and furniture.

"Any time during the 60 days that you pay me all the money due on rent and furniture, I will turn over the hotel to you.

"I will pay taxes due in September 1932.

"Yours truly,
"(Signed)  T. H. Pickford.

"I accept the above proposition and hereby transfer to you all my right, title and interest in the furniture and lease, and put you in possession of the hotel.

"(Signed)  Walter Fletcher Smith."

The material facts in this case, above set forth, are substantially without dispute.

[3] A further purported meeting of the board of directors was held on the same day in Washington, D. C. The minutes of this meeting recite the presence of Smith, Van Horn and Hodgkins, the authorization of the president to open a bank account with the Riggs National Bank, the authorization of the president, secretary and treasurer to deposit all funds of the company with that bank; and the minutes set forth also the formalities adopted for the signature and endorsement of checks.

Upon them Pickford rests his case for recovery from Smith of the unpaid rent due July 1, August 1, and September 1, 1932; and upon them Smith and the intervening petitioner Hotel Lafayette, Inc., rest the defense for Smith that the unpaid rent is due to Pickford not from Smith but from the Hotel Lafayette, Inc.

The trial court found:

"The paper of assignment from Smith to such alleged corporation referred to in the plea was executed by Smith September 9, 1932, after the rent herein sued for had accrued." [Finding No. 3]

"There was no attempt to accept any assignment from Smith to said corporation of the lease . . . until on or after September 22, 1932 . . . [Finding No. 1]

"Immediately upon the signing of this agreement [of October 7, 1932] Smith put Pickford in possession of the hotel and chattels therein. [Finding No. 5]

"Pickford was lessor and Smith the lessee of the Lafayette Hotel property from a time prior to July 1, 1932, to October 7, 1932, under a lease calling for rental payments of $2,625 on the first day of each month, and the rental payments due July 1, August 1 and September 1, 1932, herein sued for are overdue and unpaid. [Finding No. 5]"

The trial court concluded that judgment should be entered for Pickford against Smith for the amount of the rent in question and interest, and concluded also that the intervening petition of the Hotel Lafayette should be dismissed.[4] Judgment was entered accordingly. This judgment is assigned as error.[5]

The findings of the trial court, to the effect that the assignment relied upon by Smith was not executed until September 9, 1932, and that there was no attempt to accept the assignment from Smith until on or after September 22, 1932, and that Smith was lessee from before July 1, 1932 to October 7, 1932, and that on that latter date he gave up possession, if properly supported by evidence, necessitated a judgment in favor of Pickford against Smith as entered, and this regardless of the correctness of other findings made by the court which are the subject of the assignment of errors.[6] Under the facts found the privity of estate between Pickford as lessor and Smith as lessee did not terminate until October 7, 1932. Smith's only defense was the assignment which he alleged became effective June 1, 1932. If it did not become so effective, he obviously was liable for the rent. Even if it had been executed upon the first of June, still it would have availed him nothing, because it is elementary that a lessee, if he continues in possession, cannot escape liability for rent upon the theory of an assignment of the term to a third party. Such an attempt to escape rent was considered in Sanders v. Partridge, 108 Mass. 556. There, premises had been demised to J. & M., who in turn assigned the lease to the defendant. He defended a suit for rent for a quarter ending July 1st upon a showing that in the preceding May he had executed an assignment to N. But he had remained in possession. The court held the defense not tenable, saying:

"Upon the report, we must assume that the defendant's evidence went no farther than to show a formal instrument of assignment without change of possession. That would not be sufficient to relieve the defendant from his liability as assignee of the lessees.

---

[4] There were other findings of fact and conclusions of law, but in the view we take of the case, they are not material.

[5] There were other assignments of error, but in the view we take, they also are not material.

[6] The trial court had found also that "there had been no lawful organization of the corporation and issue of stock . . ." If by this the court meant that there was no legal selection of directors except those named in the certificate of incorporation and no legal selection of officers and stockholders, the court was correct. If the court meant that there had been no de jure organization of the corporation by the delivery of the certificate to the Maryland Tax Commission, the court may have been in error, but that error did not affect the result in this case. The court also found that Pickford had no such transactions with the Hotel Lafayette, Inc., as would estop him from questioning its existence as a corporation. Because of the view we take in the case that the assignment of June 1, 1932, was ineffective, the judgment of the court was correct regardless of the validity of this finding.

An assignment of error which had to do with a contempt proceeding in the case was not argued in the briefs and we therefore treat it as abandoned. The judgment of the court in the contempt proceeding has no bearing upon the liability of Smith for rent.

" . . . An assignment without deed, as of a chattel interest only, requires some act of entry, or change of actual possession, to complete its operation and divest the assignor of responsibility which arises from the holding of the estate. Taylor Landl. & Ten. §§ 449–451. [108 Mass. 556, at page 560]"

In Negley v. Morgan, 46 Pa. 281, there was a suit for rent which accrued while the defendant, assignee of a lease, was in possession. Three days before he went out of possession he had made an assignment; upon the basis of that he sought to defend. The court held that he could not. It said:

"Undoubtedly an assignee of a term is liable only for such portion of the rent reserved as falls due during the continuance of his connection with the demised premises. He is liable at all, only by reason of privity as [of] estate, and therefore liable for no more than such breaches of the covenants running with the land as occur while the privity continues. Hence it is said his assignment of the term, even though to a pauper, terminates his liability for any subsequent breaches, for it breaks the privity of estate.

"But to work such an effect the privity must be absolutely destroyed. The assignee, having entered under an assignment, and thus come into privity, that privity continues as long as his beneficial enjoyment of the demised property or right to it remains. This is manifest when it is considered what the privity of estate, out of which arises his personal liability, is. It is the actual or beneficial enjoyment of the premises, or the right of possession and enjoyment . . . Something more, then, is required to terminate the privity of an assignee of premises subject to rent and his consequent liability, than an assignment which does not put an end to his ac-

tual or beneficial possession, and his right to possession. [46 Pa. 281, at pages 284, 285]"

See also: Century Holding Co. v. Ebling Brewing Co., 185 App.Div. 292, 173 N.Y.S. 49; Kalmus v. Ebling Brewing Co., 164 N.Y.S. 176 (Sup.).

An examination of the record and consideration of the undisputed material facts as above set forth make clear that the findings of the trial court were warranted. The fact that the assignment said by Smith to have been executed on June 1, 1932, purports to have been signed on that date not only by Smith in his individual capacity but by Smith as president of the Hotel Lafayette, Inc., and by Bennett as secretary, when not even a purported election of those persons as such officers had been made until September 9th following, would alone support the finding of the court that the assignment was executed, not upon June 1st, but upon September 9th. Scrutiny of the minutes of the various purported corporate meetings makes clear that the finding of the court that there was no attempt to accept any assignment until on or after September 22, 1932, is correct. The agreement of October 7, 1932, supports the finding that Smith put Pickford in possession of the premises on that date, and supports an inference that before that date Smith was still in possession—and that date, it is to be noted, is subsequent to the purported acceptance by the corporation, on September 22, 1932, of the assignment.[7]

■ There was no binding acceptance of the assignment at any time. The Maryland Code in effect at the time of the matters in suit provides:

"When such certificate of incorporation has been delivered to the State Tax Commission with the fees provided for in Section 6 of this Article and the bonus tax, if

---

[7] Pickford testified that ". . . when he entered into the agreement of October 7th, he took over pursuant to that agreement the entire hotel and its operations . . ." Also in Smith's complaint in case No. 6476, he himself alleged that "The proposition contained in the said letter [of October 7] was by the said plaintiff [Smith] duly accepted in writing, and thereupon the said Thomas H. Pickford took possession of the Hotel Lafayette and continued in the conduct and operation of said business for a period of more than two months . . ."

The leases upon the hotel, and the fur-

nishings thereof, had been made the subject of certain trust deeds securing the payment of balance of purchase price of assignment of the leases and sale of the furnishings—all as more particularly described in the opinion of this court in case No. 6476. Apparently, from the record, possession of the hotel was turned over to these trustees by Smith on September 13, 1932, and by them restored to Smith on September 21. But no point is made of this in the briefs, and it could have had no effect upon the liability of Smith for rent due September 1.

any payable, and not before, the incorporators, their successors and assigns, shall according to the purposes, conditions and provisions in such certificate of incorporation contained, become and be a body corporate by the name therein stated. [Maryland Annotated Code 1924, Art. 23, § 7]"

Under this statute it may be—though we do not assume to pass upon the point—that the Hotel Lafayette, Inc., became a *de jure* corporation upon delivery of the certificate of incorporation to the Maryland State Tax Commission on December 27, 1929. But the Code also provides:

"The business and property of every corporation subject to the provisions of this article shall be conducted and managed by a board of not less than three directors, managers or trustees. Until the first annual meeting and until their successors are duly chosen and qualified, the board, shall consist of the persons named as such in the charter—subject, however, to the right of increase, decrease and removal granted by this article. Subject to the provisions of Section 14 of this article, the members of succeeding boards shall be elected by the stockholders or members of the corporation at their annual meetings. A majority of the board shall constitute a quorum for the transaction of business, unless the by-laws otherwise provide, but in no case shall less than one-third of the directors or less than two directors constitute a quorum for the transaction of business. [Maryland Acts 1927, c. 581, § 10, Annotated Code of Maryland, 1935 Supplement, Art. 23, § 10]"

At the purported organization meeting of the Hotel Lafayette, Inc., on September 9, 1932, the only one of the directors named in the certificate of incorporation present was Smith. His attempt alone to select a new board of directors consisting of himself, Bennett and Seal was in direct defiance of the statutory provision last above quoted. Therefore the action taken by this purported board of directors and their successors and the stockholders to whom they issued stock, and the officers purported to have been selected by them and by the stockholders, was without legal effect, and in consequence the purported acceptance of the assignment was without legal effect.

It may be commented that in case No. 6476, a paper asserted by Smith to be the foundation of a contract of December 1, 1932, for a lease of the Hotel Lafayette and for a sale of its furniture, fixtures and equipment contained the following statement:

"There is now a balance due Mr. Pickford on the furniture and fixture account amounting to .$24,453.00 *and I owe back rent for the months of July, August and September 1932* amounting to $8,000, making a total of $32,453.00. [Italics supplied]"

In Century Holding Co. v. Ebling Brewing Co., supra, the defendant sought to escape liability for rent on the theory of an assignment to one Sudbrink. In holding that he could not do so, the Supreme Court of New York, Appellate Division, speaking through Merrell, J., used the following language, which, if for the word "Sudbrink" is substituted the name "Hotel Lafayette, Inc.," is apropos in the instant case:

"If, however, Sudbrink [Hotel Lafayette, Inc.] was the mere agent or dummy of the defendant, and if the defendant intended to remain in possession, keeping control of the property . . . which assumptions are amply sustained by the evidence, it certainly cannot be said that there was any bona fide transfer of the lease to Sudbrink [Hotel Lafayette, Inc.], which would relieve defendant from its liability to pay rent to the plaintiff. [185 App.Div. 292, 173 N.Y.S. 49, at page 54]"

Accordingly, the judgment of the trial court must be, and the same is hereby

Affirmed.