James BLOOR, As Reorganization Trustee of Invesco Holding Corporation, Plaintiff,

v.

CHASE MANHATTAN MORTGAGE AND REALTY TRUST, Stevens & Edwards, Inc., W. G. Management Co., Rubin Garfinkel and Albert Wohl, Defendants.

No. 78 Civ. 1996.

United States District Court, S. D. New York.

Jan. 17, 1979.

Amend & Amend by Richard L. Schmeidler, New York City, for plaintiff.

Shea, Gould, Climenko & Casey by Martin I. Shelton and Richard F. Czaja, New York City, for defendants.

## OPINION

WHITMAN KNAPP, District Judge.

This is an action by James Bloor, Trustee in Bankruptcy of Invesco Holding Corporation, brought for breach of a lease agreement against defendant Chase Manhattan Mortgage and Realty Trust ("Chase REIT"). Defendant Chase REIT has moved for summary judgment. As set forth in the complaint, the pertinent facts are:

On November 1, 1974, plaintiff was appointed Trustee of Invesco Holding Corporation in proceedings for reorganization of certain corporations under Chapter X of the Bankruptcy Act. At that time, he took title in fee simple from the 315 West Fifty Seventh Street Corporation of certain real property located at 315 West 57th Street and 330 West 58th Street, New York, N. Y. (the "premises"). Since 1961, the premises had been subject to a ground lease between 315 West Fifty Seventh Street Corporation as landlord, and Hyman and Irving Shapiro, as tenants (hereinafter referred to in the singular as "tenant"). In 1971 the Shapiros mortgaged their interest under the ground lease to Chase REIT.

Plaintiff upon his appointment as trustee, became the successor to the landlord's interest under the ground lease. The ground lease, as amended in 1975, provided for the payment by the tenant to the landlord as "rent" and "additional rent" all real estate taxes, water and sewage charges, interest and principal payments on a certain first mortgage to the New York City Employees Retirement System, a monthly deposit of $17,000 to a certain escrow fund to be held by the landlord, and a net rental of $200,000 per year.

The lease also contained a provision (in Article EIGHTEENTH) that upon its termination by default or summary proceedings, the tenant should continue to be liable to the landlord for rent and additional rent as it came due (less any net rent collected by the landlord for use of the premises), and gave the landlord at any time after default the option of serving a notice on the tenant requiring him to pay "liquidated damages" measured by the total rent and additional rent then remaining due, less the fair rental value of the premises for the remaining term of the lease.

In April of 1976, following the Shapiros' failure to meet their obligations under the ground lease, Chase REIT began making payments due the landlord. On July 15, 1976 Chase REIT accepted from the Shapiros an assignment of their interest as tenant under the ground lease; it did not, however, contract to assume the tenant's obligations.

On October 29, 1976, Chase REIT assigned all of its interest in the premises to Stevens & Edwards, Inc. and ceased making rental payments. Prior to such assignment, Chase REIT had neglected to make water and tax payments totalling approximately $127,489.[1]

---

1. The trustee contends that it has been damaged to the extent of $135,904 by the failure of payment.

On November 15, 1976, the ground lease being in default, the trustee gave written notice to Stevens & Edwards and to Chase REIT that it was electing to terminate the ground lease as of November 26, 1976.

On January 10, 1977 the trustee commenced a summary proceeding against Stevens & Edwards in the Civil Court of the City of New York. In its petition the trustee alleged, as its first cause of action, that Stevens & Edwards was improperly holding over after the expiration of the ground lease on November 26, 1976, and as a second cause of action, that Stevens & Edwards was in default in the payment of rent.

On February 11, 1977 a stipulation was entered into in open court terminating the summary proceeding. The stipulation provided that a judgment giving possession of the premises to the trustee would be entered pursuant to the holdover cause of action, but that the claim for nonpayment of rent would be withdrawn. The parties also agreed that in the event that Stevens & Edwards made the appropriate payments under the lease within sixty days, the trustee would reinstate it as tenant.

On April 29, 1977, pursuant to a warrant issued in the summary proceeding, possession of the premises was delivered to the trustee. On August 10, 1977 the trustee served on Chase REIT notice of election to claim liquidated damages under Article EIGHTEENTH.

The trustee seeks to collect from Chase REIT all rent and additional rent unpaid under the lease. Because Chase REIT never contracted to assume any of the tenant's liabilities, there is no privity of contract between it and the trustee. Therefore, the trustee can prevail only to the extent it can establish liability under the doctrine of privity of estate. See *Tate v. McCormick* (Gen.Term 2d Dept.1880) 23 Hun. 218; *Mann v. Munch Brewery* (1919) 225 N.Y. 189, 121 N.E. 746.

There is no doubt as to Chase REIT's liability accruing prior to October 29, 1976, when Chase REIT assigned to Stevens & Edwards its interest under the lease. The critical questions pertain to obligations accruing during the period between that day and April 29, 1977 while Stevens & Edwards was purportedly in possession of the premises, and subsequent thereto, when the trustee had concededly accepted possession of the premises from the marshal in the dispossess proceedings.

It is the trustee's position: first, that the assignment to Stevens & Edwards was a sham as Chase REIT was in fact in possession at all times until April 29, 1977 when the marshal delivered the premises, and second, that on November 15, 1976 when the trustee served its notice to terminate, Chase REIT, as tenant actually in possession, became liable under Article EIGHTEENTH for all rent and additional rent until the end of the term, such liability to be measured until August 10, 1977 (when the trustee exercised its Article EIGHTEENTH option for liquidated damages) by the total amount of rent and additional rents as they accrued less any monies the trustee may have received by leasing the premises, and thereafter by the liquidated damage formula.

Chase REIT, on the other hand, claims that it terminated its privity of estate by the October 29th assignment to Stevens & Edwards and thereby relieved itself of all subsequent liability to the trustee; and that, in any event, it cannot be held liable for any payments falling due after April 29, 1977 when the trustee accepted possession from the marshal.

These questions are presented to us by Chase REIT's motion for summary judgment. For reasons that follow, we find the existence of a question of fact with respect to the period prior to the day on which the trustee accepted possession from the marshal, but grant summary judgment with respect to any liability falling due thereafter.

I. The period prior to the trustee's acceptance of possession from the marshal:

Ordinarily a person is liable only for the obligations he agrees to assume. Accordingly, a mortgagee of a lease will not be held to have assumed the liabilities of his

mortgagor to the latter's landlord. However, the ancient common law doctrine of privity of estate is an exception to this rule. Although the mortgagee is not a party to the landlord-tenant agreement, and is therefore not in privity of contract with the landlord, if the mortgagee accepts assignment of the mortgagor's lease and enters into possession of the premises, he comes into privity of estate with the landlord, thereby becoming liable for any of the tenant's obligations which accrue during such privity of estate, provided that the obligation "touches and concerns" the land. *Mann v. Munch Brewery, supra* (at 195, 121 N.E. 746).

█ Apparently the common law judges who created this doctrine recognized it to be a harsh one when applied to a non-assuming mortgagee, and therefore fashioned a relatively easy escape hatch which allowed the mortgagee to relieve himself of all obligations to the landlord by any valid assignment of the lease to a third party. It is Chase REIT's position that it did so assign the lease to Stevens & Edwards on October 26, 1976, and that summary judgment should be granted with respect to any liability said to have accrued thereafter. The trustee, on the other hand, contends that this assignment was "colorable" and fraudulent and should be wholly disregarded. It is our conclusion that while under applicable New York decisions it may well be difficult for the trustee to establish his position, a question of fact exists with respect to any obligations accruing prior to April 29, 1977, when the trustee took possession of the property.

The most elaborate discussion of the privity of estate doctrine as applicable to the situation before us is to be found in the various opinions in *Century Holding Co. v. Ebling Brewing Co.* (App. Term, 1st Dept. 1917), 98 Misc. 226, 162 N.Y.S. 1061 (App. Term, 1st Dept. 1917) 167 N.Y.S. 52 (1st Dept. 1918) 185 App.Div. 292, 173 N.Y.S. 49. In that case, a mortgagee who had accepted a lease assignment, thereafter attempted to relieve itself of liability by assigning the lease to one of its employees. The first opinion (written by Hon. Irving Lehman, subsequently Chief Judge of the New York Court of Appeals, with the concurrence of Hon. Edward R. Finch also a subsequent Court of Appeals Judge) reversed a judgment for the plaintiff landlord which had been entered on a jury verdict finding the assignment to have been "colorable" and fraudulent. In his opinion, Judge Lehman set forth the two necessary elements for the establishment of privity of estate: the mortgagee must have accepted assignment of the lease, and thereafter must have entered upon and assumed possession of the premises.[2] Once such possession has been assumed the mortgagee becomes liable for rent accruing during his possession, and for all "covenants in the original lease which run with the land." (162 N.Y.S. at 1064, quoting *Stewart v. Long Island R. R. Co.* (1886) 102 N.Y. 601, 8 N.E. 200. This liability could be terminated, however, by reassignment of the lease to any third party, "together with the note for which the lease was security." (162 N.Y.S. at 1065). Judge Lehman ruled that so long as such assignment was legally effective, it could not be found "colorable" and fraudulent simply because it was made to an assetless employee of the assignor solely for the purpose of relieving the assignor of liability. Furthermore, the fact that the subtenant of the assignor remained in possession of the premises would not defeat the assignment. Concluding that the combination of all of these factors was insufficient to sustain a jury's finding either that the assignment was colorable and fraudulent, or that the assignee had been acting as "agent" for the assignor, the Appellate Term reversed and ordered a new trial.

The second Appellate Term decision in *Century Holding* was upon appeal from a directed verdict against the landlord. Observing that "collateral security cannot be

---

**2.** In *Lynch v. Joseph* (4th Dept. 1930) 228 App. Div. 367, 240 N.Y.S. 176, it was held that possession need not be actual, but could be symbolized by delivery and acceptance of the assignment.

effectively assigned without an assignment of the debt which it secures," the court found a question of fact to exist as to whether the assignor had actually assigned to its employee its interest in the note which had been secured by the lease, and ordered yet another trial on that issue (167 N.Y.S. at 54).

The third opinion, upon direct appeal to the Appellate Division, resulted in sustaining a jury verdict in the landlord's favor. That jury had specifically found that the note had not been assigned to the employee, and also that the assignment of the lease had been made in bad faith since the defendant-assignor had actually intended to "continue in possession, dominion, and control of the premises." (173 N.Y.S. at 51). Although the Appellate Division ruled that the evidence fully supported the jury's finding that the note had never been assigned to the employee, it did not rest its decision upholding the verdict on that finding. Rather, it went on to determine (largely upon the considerations Judge Lehman had previously found inadequate) that the employee had been acting as "mere agent or dummy" of the defendant assignee, and that there had therefore been no "bona fide transfer of the lease . . . which would relieve the defendant of its liability to pay rent." (167 N.Y.S. at 54).

█ So far as we can determine, these are the most recent New York opinions dealing extensively with an assignee's attempt to end privity of estate liability by assignment to a third party. (See also *Lynch v. Joseph* (4th Dept. 1930) 228 App. Div. 367, 240 N.Y.S. 176, for a brief reference to assignment as relief from liability under privity of estate). Although it requires little discussion to demonstrate that

these opinions require us to hold that the question is one of fact which cannot be disposed of on summary judgment (even Judge Lehman sent the matter back for a new trial), we have attempted a detailed analysis in the hope that it will encourage the parties to do further research which will shed more light on how the question should be resolved at trial.[3]

## II. The period after the trustee obtained possession from the marshal:

The trustee's argument that he is entitled to recover damages for the loss of rent until the end of the lease's original term is based on the following language in Article EIGHTEENTH:

"In the event that this lease be terminated by summary proceedings, or otherwise, as above provided, and whether or not the premises be re-let, the Landlord shall be entitled to recover from the Tenant and the Tenant shall pay to the Landlord as follows: . . .

(b) An amount equal to the amount of all rent and additional rent reserved under this lease, less the net rent, if any collected by the Landlord on re-letting the demised premises which shall be due and payable by the Tenant to the Landlord on the several days on which the rent and the additional rent reserved under this Lease would have become due and payable . . .

Provided however, that if this lease shall be terminated after a default specified in subdivision (2) of Article SEVENTEENTH, the Landlord may at any time thereafter, at its option, which shall be exercised by the service of a notice on the Tenant, collect from the Tenant and the Tenant shall pay

**3.** We reject Chase REIT's contention that the validity of the assignment is conclusively established by the collateral estoppel effect of the consent decree in the dispossess proceeding in which the trustee obtained possession of the premises. Aside from the fact that we have found no case where the doctrine has been invoked against a party who was successful in the original litigation, collateral estoppel only applies where the party against whom it is invoked has had an adequate opportunity and

incentive to litigate the issue in the original litigation. Restatement, Judgments (2nd) § 68.- 1(e); cf. *Parklane Hosiery Company, Inc. v. Leo M. Shore* (1979) 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552, *Schwartz v. Public Administrator* (1969) 298 N.Y.S.2d 955, 24 N.Y.2d 65, 71, 246 N.E.2d 725. In the dispossess proceeding the trustee was concerned only with obtaining possession of the premises and had no interest in whether or not possession was delivered by Stevens & Edwards, or by Chase REIT.

... [liquidated damages measured by the difference between the rent due for the remainder of the term less the fair rental value of the premises]."

It will be recalled that the trustee did not send the notice called for in the last quoted proviso until some time after it had acquired possession from the marshal and any privity of estate existing between it and Chase REIT had been terminated. The trustee contends, however, that the words "shall pay" in the third line of subdivision (1) fix the entire liability at the time of default, and that the trustee's exercise of its option merely governs the measure of damages.

In view of the fact that provisions like the one quoted are commonplace in New York, we find it altogether remarkable that there does not seem to be a single case deciding whether a landlord can, in circumstances such as these, invoke such a provision against one whose obligations to the landlord arose solely through privity of estate. The parties have cited no such case and our independent research has uncovered none.

However, it is our conclusion that the New York Court of Appeals, if ever presented with the question, would decide it against the landlord. In the first place, the New York courts seem to recognize privity of estate as a harsh doctrine when applied against one who has never contracted to assume any obligation.[4] Moreover, the basic purpose of the doctrine as we read the cases is to provide the landlord with some assurance that the day-to-day obligations of its lease will be attended to by a person actually in possession, and it is unnecessary to such purpose to impose upon the temporary possessor future penalties that the original tenant had contracted to assume.

Moreover, the New York Court of Appeals by dictum has given clear support to the position. In *Mann v. Munch Brewery,*

*supra,* it was found that the assignee—unlike Chase REIT in the case at bar—had contracted to assume the obligations of the lease. The assignee was accordingly held liable under a clause providing that after the tenant had been dispossessed he shall nonetheless "continue to remain liable for the payment of the rent ... until the expiration of the entire term thereof." (at 194, 121 N.E. 746). There was clear dictum, however, that he would not have been so liable had he not contracted to assume the lease's obligations. (at 194, 121 N.E. 746).

We accordingly conclude that Chase REIT is not liable for any rents or additional rent falling due after the day in which the marshal delivered possession to the trustee and grant partial summary judgment to that extent, but otherwise deny the motion for summary judgment.

---

4. Its harshness is aptly illustrated by the facts at bar. So far as we can determine, Chase REIT gained absolutely nothing by accepting the assignment from the Shapiros. It could have effectively managed the property through their agency. Or, if it were desirable to get them out of the picture, it could have caused them to assign the lease directly to Stevens & Edwards, thus avoiding the whole question.