SYLVINA E. WALL, as Ancillary Executrix of JOHN L. WALL, Deceased, Respondent, *v.* ALEXANDER HESS, Appellant.

**Landlord and tenant — lease — provision that tenant shall pay taxes assessed during term — liability of tenant to pay tax assessed before but not payable until after expiration of term.**

Where a clause in a lease provided that the tenant shall " pay and discharge when due and payable or within sixty days thereafter, all and every tax and taxes, * * * which shall be assessed, levied or imposed upon the said premises, or any part thereof, * * * during the said term," the duty of the tenant to pay taxes fixed and levied two days before the expiration of the term but not payable until thereafter is absolute, and the fact that a change in the charter of the municipality has increased his burdens in this regard will not relieve him from his agreement. (*Ward* v. *Union Trust Co. of N. Y.*, 224 N. Y. 73, distinguished.)

*Wall* v. *Hess*, 194 App. Div. 456, affirmed.

(Argued January 17, 1922; decided February 3, 1922.)

APPEAL from a judgment, entered January 5, 1921, upon an order of the Appellate Division of the Supreme Court in the first judicial department which reversed an order of the court at a Trial Term setting aside a verdict in favor of plaintiff and granting a new trial and directed the reinstatement of said verdict.

*David Cohen* for appellant. The defendant, under the terms of the covenant contained in the lease, was not obligated to pay and discharge those taxes which did not become due and payable, or a lien upon the premises, during the continuance of his lease. (*Ward* v. *Union Trust Co.*, 224 N. Y. 73; *Morris* v. *Suerken*, 88 Misc. Rep. 262.)

*Carlisle Norwood* for respondent. The lessee's covenant was to pay when due and payable or sixty days

thereafter every tax assessed or imposed upon the premises during the term.    That was an absolute, unqualified obligation to pay, but as to the time for making the payment he had an indulgence of sixty days after such taxes became due and payable.    The money to be paid was the sum in dollars and cents of tax assessed during the term of the lease.    (*Ogden* v. *Getty,* 100 App. Div. 430; *Matter of Sherwoods,* 210 Fed. Rep. 754; *Amory* v. *Melvin,* 112 Mass. 83; *Craig* v. *Summers,* 47 Minn. 189; *Walker* v. *Whittemore,* 112 Mass. 187; *Richardson* v. *Gordon,* 188 Mass. 279; *Post* v. *Kearney,* 2 N. Y. 394; *Mayor, etc.,* v. *Cashman,* 10 Johns. 96; *Ward* v. *Union Trust Co.,* 224 N. Y. 73; 172 App. Div. 569; *Welch* v. *Phillips,* 224 Mass. 267; *Waterman* v. *Harkness,* 2 Mo. App. 494.)

POUND, J.    This is an action against a tenant to recover unpaid rent of premises in the city of New York and taxes thereon according to the terms of a written lease. On the trial the court directed judgment for the plaintiff, but afterwards set the verdict aside and ordered a new trial because plaintiff refused to stipulate to reduce the recovery by $1,472.53, being the amount of taxes for the year 1917, with interest.    The Appellate Division reversed the order and reinstated the verdict.

The lease was for a term of fifteen years, eight months from the 1st day of September, 1901, ending on the 30th day of April, 1917, at twelve o'clock midnight.

It contained the following clause:    "*First.* That the said party of the second part (defendant) shall and will pay and discharge *when due and payable or within sixty days thereafter,* all and *every tax and taxes,* Croton water or other water rates, charges for placing, replacing or repairing water meters upon said premises, rents, charges, assessments, duties and other impositions whatsoever, as well ordinary as extraordinary, *which shall be assessed, levied or imposed upon the said premises, or any part*

*thereof,* by any government, power or authority whatsoever *during the said term,* except that the parties of the first part [plaintiff's testator] covenant and agree to pay all taxes, assessments or other charges which may become a lien and charge on said premises in the year 1901; but the party of the second part covenants and agrees to pay the water rates or rents chargeable against or to said premises or any part thereof after September 1st, 1901."

The taxes for the year 1917 were fixed and levied on the 28th day of March, 1917. At the date of the lease, May 6, 1901, and thereafter until January 1, 1912, when chapter 455 of the Laws. of 1911, amending the city charter, took effect, taxes were assessed on the 15th day of September in each year; were payable on the 1st day of October thereafter and became liens on the real estate affected thereby on the days when they became due and payable. It follows that if no change had been made in the charter the tenant would have been under no obligation to pay the taxes in suit for they would have been neither assessed nor payable during the term, but under the change in the charter the taxes were assessed but not payable during the term.

The Appellate Division in resolving the question of liability for taxes in favor of the landlord relied upon *Ogden* v. *Getty* (100 App. Div. 430) in which it was held: " Where a lease of premises, located in the city of New York, for a term of twenty-one years, expiring October 1, 1903, provides that the lessee shall pay all taxes, ' laid, levied, assessed or imposed,' on the demised premises during the term, the lessee is required to pay a tax levied by the city of New York upon the demised premises, the amount of which becomes finally and unalterably fixed and imposed on. September 15, 1903, notwithstanding that such tax cannot be paid nor a bill therefor be obtained prior to October 5, 1903."

. This court had recently before it *Ward* v. *Union Trust*

*Co. of N. Y.* (224 N. Y. 73) in which the provisions of the lease were, with the important exception hereinafter noted, substantially the same as herein. The Ward lease expired at noon on May 1, 1914, and contained a covenant as follows: " Provided always and the lessee hereby covenants to pay said rent punctually, and to pay and discharge all annual taxes as shall during said term be imposed on said premises hereby demised, as soon as they become due and payable, and to pay the Croton and all other water charges as soon as the same shall become due, and *to keep said demised premises free, clear, discharged and unincumbered from all such taxes and* Croton and other water charges *during said term.*"

The lessee was held liable, not for the taxes for the year 1914 which had been assessed against the premises during its term, but for the one-half thereof which became due and payable and a lien on the demised premises on May 1, 1914, a few hours before the expiration of the lease. The expression of the intention of the parties that this sum only should be paid was, however, found entirely in the words: " *keep said demised premises free, clear, discharged and unincumbered from all such taxes during said term,*" which are not in the lease we are now considering. CHASE, J., said: " Reading the covenant *as a whole,* the promise of the tenant includes the general taxes imposed and becoming due and payable *within the term.* The demised premises became incumbered with one-half of the tax of 1914 on May 1, 1914. The lessee could not leave the demised premises *free, clear, discharged and unincumbered* from taxes during said term if the taxes so actually due and payable on the date of the expiration of the lease were left unpaid." (P. 78.) The gist of the decision plainly is the clause as to incumbrances, which is treated as evidencing the intention of the parties to the lease and not as making a general rule. The landlord was to receive his rent during the term and was to be subject to no expense on account of the

demised premises for taxes which became due and payable and liens during said term. The landlord covenanted to receive the premises unincumbered and the duty of the tenant was discharged when it so delivered them.

That is not this case. The obligation of this defendant was to pay all taxes that might be *assessed, levied or imposed* against the premises during the term. No escape is possible from the conclusion that the taxes for the year 1917 were finally and unalterably fixed and imposed against the demised premises during the term of the lease, although not payable until after the expiration of such term.

We should not let the tenant out of his promise because the change in the charter increases his burdens in this regard. Landlords as a class are not lacking in sagacity when it comes to contemplated changes in the tax laws. They properly endeavor to draw their leases with sufficient definiteness to protect themselves from such contingencies. I fail to see what more the landlord could have done to protect himself in this case. We should not add the words " during the term of this lease " to the words of the parties in order to give what may seem to us a fairer meaning to the contract than can be found in the words chosen. · The words are not there. That is not the meaning of the lease in legal contemplation. The duty of the tenant to pay the 1917 taxes is absolute. The *Ward* case states an exception to the general rule, amply recognized and stated by CHASE, J. The exception should not be extended beyond the circumstances which moved the court in that case to find for the tenant in part on the terms of the lease before it.

The judgment appealed from should be affirmed, with costs.

CRANE, J. (dissenting). By written instrument under seal, Jacob Wall and John L. Wall leased to the defendant certain premises situated in the southeasterly corner of

Sixth avenue and Twenty-first street in the city of New York, known as No. 338 Sixth avenue.

The term of the lease was fifteen years and eight months, commencing on the first day of September, 1901, and ending on the thirtieth day of April, 1917, at twelve o'clock midnight of that day. The rental was $10,500 a year, payable the first day of each and every month. Said lease contained the following clause:

" *First.* That the said party of the second part shall and will pay and discharge when due and payable or within sixty days thereafter, all and every tax and taxes, Croton water or other water rates, charges for placing, replacing or repairing water meters upon said premises, rents, charges, assessments, duties and other impositions whatsoever, as well ordinary as extraordinary, which shall be assessed, levied or imposed upon the said premises, or any part thereof, by any government, power or authority whatsoever during the said term, except that the parties of the first part covenant and agree to pay all taxes, assessments or other charges which may become a lien and charge on said premises in the year 1901; but the party of the second part covenants and agrees to pay the water rates or rents chargeable against or to said premises or any part thereof after September 1st, 1901."

The interest of Jacob Wall was assigned to John L. Wall and the latter having died, the plaintiff, his duly appointed executrix, brings this action for moneys claimed to be due under the lease.

The only question is whether the tenant is liable for the taxes becoming due and payable on May 1st, 1917, the day after the expiration of the lease. The Trial Term held that the defendant was not liable to pay these taxes, but this conclusion has been reversed by the Appellate Division, two of the justices dissenting.

By the Greater New York Charter in force and effect in 1901, the assessment roll of each borough of the city was to be delivered to the receiver of taxes on or before the 15th

day of September (Sec. 911), and the taxes became due and payable on the first Monday of October. (Sec. 914.) This evidently explains the provision in the above clause of the lease that the party of the first part covenants and agrees to pay all taxes and assessments which may become a lien and charge on the premises in the year 1901. The lease commencing September 1st, the taxes under the charter would become due and payable October 1st, and it was agreed that the owner should, therefore, pay the taxes for the year 1901. Section 911 was amended by chapter 455 of the Laws of 1911 by changing the date when the assessment rolls should be finally completed and delivered to the receiver of taxes, to the 28th day of March. The date for payment of taxes was changed so as to make one-half of the taxes upon real estate due and payable on the first day of May and the remaining and final half payable on the first day of November. All taxes, it was provided, should be and become liens on the real estate affected on the respective days when they became due and payable and should remain liens until paid.

The lease was for a long term, fifteen years and eight months, and it seems reasonable to suppose that the parties contracted with a view to those things which would happen during the term of the lease. In my opinion, the wording of the clause does not warrant a construction which would require the tenant to do something which did not happen to the premises until after his term had expired and he had ceased to have anything to do with the property. This clause, above quoted, states that the lessee shall and will pay and discharge when due and payable all and every tax upon said premises which shall be assessed. The taxes in this case under the amendment of the charter, as above stated, did not become due and payable until May 1st, 1917. At that time the lease had expired. The defendant had ceased to have any interest in the property. During his term which was up to midnight of April 30, 1917, he

could not pay the taxes assessed even if he desired to do so. They were not payable. The provision of the lease regarding the payment of taxes must have been written with a view to each one of the years that the lease had to run; each one of the fifteen years. It was not made, having in mind solely the date of expiration. In fact the changes in the law shifting the date of payment and of lien did not occur until after the making and execution of the instrument. Had the law remained as it was when the parties made the lease, the lessee's term would have expired many months before the taxes became due on October 1st. It cannot be said, therefore, that the parties contemplated that the taxes would be assessed before and become due and payable after the expiration of the lease and made their provisions accordingly. It is for this reason that I am of the opinion that the parties used these words, intending them to apply to the things which would happen during the term of the lease, *i. e.,* that the lessee was to pay the taxes which became due and payable while his lease was in force and effect, not those which became due and a lien upon the property after the expiration of his term. In effect this is what the clause means. If more than that had been intended specific provision would have been made for it. This construction of the lease seems to be in harmony with our decision in *Ward* v. *Union Trust Company of N. Y.* (224 N. Y. 73). The lease in that case contained the covenant as follows: " Provided always and the lessee hereby covenants to pay said rent punctually, and to pay and discharge all annual taxes as shall during said term be imposed on said premises hereby demised, as soon as they become due and payable, and to pay the Croton and all other water charges as soon as the same shall become due, and to keep said demised premises free, clear, discharged and unincumbered from all such taxes and Croton and other water charges during said term, and to put and keep the said premises in good order and

repair, and in all respects promptly comply with and execute all the laws, orders and regulations of the State and municipal authorities applicable to said premises; except as hereinafter provided with respect to the widening of Fifth avenue." One-half of the amount of taxes in that case became due and payable on the day on which the term of the defendant's lease expired. It was properly held that he should pay this half because the taxes became due and payable while he was in possession. As Judge CHASE said: " Reading the covenant as a whole, the promise of the tenant includes the general taxes imposed and becoming due and payable within the term. The demised premises became incumbered with one-half of the tax of 1914 on May 1, 1914. The lessee could not leave the demised premises free, clear, discharged and unincumbered from taxes during said term if the taxes so actually due and payable on the date of the expiration of the lease were left unpaid. The payment of the tax comes precisely within the terms of the contract made by the lessee and we can only consider and enforce it." (pp. 75, 78.) So in this case, reading the covenant as a whole, the promise of the tenant included merely the payment of the general taxes imposed and becoming due and payable within the term. The fact that in the *Ward* case the covenant also was to keep the demised premises unincumbered was not the determining feature and is not a distinguishing element between that case and this. The effect is the same in this case. By the charter provision, above referred to, the taxes became a lien on the day when they became due and payable. It is the due date, the time when the parties must act, not the city officials, which was in the minds of the lessor and lessee. When the taxes were assessed was a matter of no importance. It could be weeks or months prior to the time of payment. This was a mere matter of detail, of bookkeeping, of administrative work on the part of the city government. What the landlord and tenant had in mind was the thing

which affected them; it was the date when payment had to be made by one or the other; when the real property became charged with a lien. The assessment did not affect either of them until by operation of law it touched the property and became a payable tax. Therefore, emphasis in both these cases by reason of the phraseology used, comes upon the words " due and payable," and indicates that the tenant was to pay all such charges which matured during the term of his lease.

For this reason I am of the opinion that the judgment of the Appellate Division should be modified by deducting therefrom the amount of taxes due and payable on May 1, 1917, to wit, the sum of $1,313 and interest, and as so modified affirmed, without costs.

HISCOCK, Ch. J., CARDOZO and McLAUGHLIN, JJ., concur with POUND, J.; CRANE, J., reads dissenting opinion, with whom HOGAN and ANDREWS, JJ., concur.

Judgment affirmed.