JOHN MOLLER, Respondent, v. THE PEOPLES NATIONAL BANK OF BROOKLYN, Appellant.

(Argued January 11, 1932: decided February 9, 1932.)

*Marshall McLean* for appellant.   The word " imposed " as used in the tax covenant is synonymous with the word " charged."   (Williston on Contracts, § 219; *Manning Realty Corp.* v. *Topping Bros.*, 120 Misc. Rep. 592; 6 Words & Phrases, First Series.)   The tax for 1930 was not charged against the premises, nor could it be paid until after the expiration of the lease and the obligation of paying the same is not chargeable against the lessee.   (*Ward* v *Union Trust Co.*, 224 N. Y. 73; New York City Charter, § 914; Laws of 1916, chap. 17.)

*Lester J. Moller* for respondent.   The obligation of the defendant is absolute as the taxes were imposed upon the premises on March 28, 1930, during the term of the lease.   (*Wall* v. *Hess*, 232 N. Y. 472; *Apex Leasing Co.* v. *White Enamel Refrigerator Co.*, 202 App. Div. 354; *Lewis* v. *Petersen*, 241 N. Y. 268; *Walker* v. *Stein*, 222 App. Div. 22; *Ogden* v. *Getty*, 100 App. Div. 430; *Terry* v. *Lucas*, 66 Misc. Rep. 346; *Brecher* v. *11 West 42nd Street, Inc.*, 132 Misc. Rep. 329; *Welch* v. *Phillips*, 224 Mass. 267; *Amory* v. *Melvin*, 112 Mass. 83; *Matter of Sherwoods*, 210 Fed. Rep. 754; *Elliott* v. *Gantt*, 64 Mo. App. 248; *Waterman* v. *Harkness*, 2 Mo. App. 494.)   The addition of the words " or charged " does not limit the defendant's obligation to the payment of only such taxes as became liens during

the term of the lease. (*Terry* v. *Lucas*, 66 Misc. Rep. 346; *Elliott* v. *Gantt*, 64 Mo. App. 248; *Waterman* v. *Harkness*, 2 Mo. App. 494; *Wall* v. *Hess*, 232 N.Y. 476.)

O'BRIEN, J. Plaintiff leased premises in the borough of Brooklyn to defendant for a term of twenty years beginning May 1, 1910. The tenant covenanted to "discharge in each and every year all such taxes, water rates and assessments as may be *imposed or charged* upon the demised premises herein described, and if the same shall not be so paid and discharged within three months after the same shall have been *imposed,* then to yield, render and pay unto the said party of the first part, his legal representatives or assigns, within one month after such default as and for additional rent whatever sums may be necessary to pay and discharge the said taxes, water rates and assessments for such year, or either of the same remaining unpaid, with all penalties and interest accrued thereon."

The complaint alleges that on March 27, 1930, taxes in a certain amount were "imposed or charged" on the premises. The answer denies that allegation but admits that on that date the amount of the tax "*to be* imposed or *to be* charged" upon the premises for the year 1930 was fixed and determined pursuant to the provisions of the Greater New York Charter and that the first half of the taxes for the year 1930 became payable May 1, 1930, and the second half on November 1, 1930. It denies any knowledge or information sufficient to form a belief as to the exact amount of the tax payable on May 1, 1930, and on November 1, 1930. The issue of law, as raised by the pleadings, is whether on March 27, 1930, the tax was actually "imposed or charged" or whether on that date an amount was fixed which later was "to be imposed or charged." The answer denies not only that the taxes were charged on that date but it also denies that they were imposed.

When this lease was executed, section 911 in the form in which it appeared in the amended Greater New York Charter (Laws of 1901, ch. 466) and section 914, as amended by chapter 447 of the Laws of 1908, were in effect. Section 911, as it then read, directed the Board of Aldermen to cause the assessment rolls to be delivered on or before September 15 of each year to the collector of taxes with an annexed warrant requiring him to collect from the persons named in the rolls the sums mentioned opposite their respective names. Section 914 at that time directed the receiver of taxes to give public notice that the assessment rolls have been delivered to him and that all taxes shall be due and payable on the first Monday of October in each year. The same section also provided that all taxes should be and become liens on the real estate affected on the day when they became due and payable and should remain liens until paid. After the execution of the lease and prior to the expiration of its term, both sections of the charter were amended. By chapter 455 of the Laws of 1911, section 911 was changed by substituting the date March 28 for September 15, and by chapter 17 of the Laws of 1916, section 914 eliminated the date first Monday in October. As a substitute for that date upon which taxes upon real estate shall be due and payable, the statute designates one-half on May 1 and the second half on November 1. This section, as amended, then proceeds: "All taxes shall be and become liens on the real estate affected thereby and shall be construed as and deemed to be *charges* thereon on the respective days when they become due and payable as hereinbefore provided and not earlier and shall remain such liens until paid." The phrase, " and shall be construed as and deemed to be charges thereon," did not appear in the statute at the time the parties entered into the lease. Specifically, the word " charges " was then absent.

The parties may be presumed to have contracted with

a view to a possible change in the law prior to the expiration of the term of the lease but, in attempting to discern their intent by the language which they used, they may also be presumed to have had primary reference to the state of the law as it existed at the date of execution. Then, neither the word "imposed" nor the word "charged" was included in the statute. Shall the expression "imposed *or* charged" be treated as disjunctive or shall the words be construed as synonymous? Is one explanatory of the other or were they intended to signify different things? If they are interpretive or expository of each other, "charged" might mean the same as "imposed." In a case where a tenant covenanted to pay taxes which shall be "assessed, levied or imposed" during the term, we have held that on the date prescribed for the delivery of the assessment rolls to the collector of taxes, the taxes were finally and unalterably "fixed and imposed" upon the demised premises, although not then payable. (*Wall* v. *Hess*, 232 N. Y. 472, 476.) So if we take "charged" to mean "imposed," we would be obliged to decide in the case before us that on March 27, 1930, the taxes were imposed and the tenant must pay them, although they did not become payable and no lien attached to the realty until May 1. If, on the other hand, we interpret "imposed" as explained and defined by "charged," then the tenant is not liable until, in the language of section 914 as it read at the expiration of the lease, the taxes become liens or charges. Although the statute did not specifically refer to charges but dealt only with liens when the parties agreed upon the verbiage in their lease, the most reasonable inference concerning their intent leads to the conclusion that they intended that "imposed" and "charged" should be treated as synonymous and should have reference to the attachment or the imposition or the impressment of a lien. In the covenant the word "charged" is used only once. Twice the parties employ the word "imposed." When

the lease provides that the tenant shall discharge all taxes as may be " imposed or charged " and, if he fails to discharge them within three months after they shall have been " imposed," he will pay to the landlord within one month after default whatever sum as may be necessary to discharge not only the taxes but also all penalties and interest, one cannot reasonably conclude that the parties intended to draw a distinction between a tax the amount of which has merely been fixed and imposed, in the sense in which the language is defined in *Wall* v. *Hess* (*supra*), and a tax which has been charged. The word " imposed " cannot be deemed to have been used in different senses in the same sentence. From the context it must have been intended to mean the same as " charged " and to signify an assessment which has ripened into a due payment and in default of which the law attaches a lien to the land as well as a penalty for failure to discharge within a prescribed duration. It is hardly credible that the three months' period of grace was intended to run from a date prior to the one when the tax was first payable, yet that would be the result of holding that it ran from the date when the tax was imposed, if " imposed " is interpreted as meaning something different from " charged." We think, therefore, that on March 27, 1930, a definite amount became fixed which upon May 1 would become a charge and lien. The purpose of this covenant, unlike the one in *Wall* v. *Hess* (*supra*), must fairly be read as intending to protect the landlord from the imposition only of liens, charges, penalties and interest upon unpaid taxes which might become payable during the term of the lease.

The judgment of the Appellate Division and that of the Special Term should be reversed and the plaintiff's motion for judgment on the pleadings denied, with costs in all courts.

CARDOZO, Ch. J., POUND, CRANE, LEHMAN and HUBBS, JJ., concur; KELLOGG, J., not sitting.

Judgments reversed, etc.