## L. P. HOLLANDER COMPANY INC., petitioner.

Suffolk.    December 13, 1937, October 3, 1938. — October 25, 1938.

Present: FIELD, C.J., LUMMUS, QUA, & COX, JJ.

*Landlord and Tenant*, Construction of lease, Covenant to pay taxes. *Conflict of Laws. Receiver. Words, "*Matured."

A lease made in another State of land there must be construed according to that State's law.

Under provisions of a lease to a corporation of which a receiver was later appointed with June 1 set as the last day for filing claims, that the lessee should "punctually pay and discharge all taxes," which "shall be paid within sixty days" after becoming "due and payable," and that if such an "amount" should not be paid "at the time or in the manner aforesaid" the lessor might treat it as added to and collectible with the "month's rent next thereafter to become due" or might pay it himself and look to the lessee for repayment within ten days after his payment, the lessor on June 1 had no "matured" and provable claim against the lessee respecting unpaid taxes due May 1.

In proceedings in receivership of a lessee corporation with June 1 set as the last day for filing claims, provisions of the lease that the lessee should pay all taxes and that in default of payment within thirty days after taxes fell due the lessor might pay them and treat the amount paid as added to the rent to become due on the next rent day, the rent days being the first day of May and of every second month thereafter, gave the lessor on June 1 a "matured" and provable claim for breach of the lessee's covenant to pay the taxes due May 1, which claim was not affected by the lessor's payment of the taxes in November.

PETITION, filed in the Superior Court on January 16, 1933.

The decree described in the opinion was entered by order of *Williams*, J.

*A. E. Whittemore*, for the claimants.

*F. G. Goodale*, (*W. A. Neal* with him,) for the receiver.

LUMMUS, J.    This is a petition for dissolution of a corporation, under G. L. (Ter. Ed.) c. 155, §§ 50–53. The corporation has been in bankruptcy, where all proved claims were paid in full, leaving a balance of assets in the hands of the corporation at the filing of the present petition. A receiver was appointed on March 8, 1933, and June 1, 1933, was fixed as the time before which claims

must be filed with the receiver, in order that they might share in the distribution of the assets. Two claims are before us, those of Kaskel and of Browning. By decree of July 2, 1937, the claim of Kaskel was allowed in the sum of $66,494.08 instead of $74,391.58 as claimed. The claim of Browning was allowed in the sum of $62,657.85 instead of $70,555.35 as claimed. These and other claims as allowed in the aggregate substantially exceed the assets. But the claimants, seeking allowance of the larger sums claimed, bring the case here upon exceptions as well as appeal. This may be done in equity, useless as such a duplication of remedies may be. *Shea* v. *Lexington,* 290 Mass. 361, 373. *Todd* v. *Pearce,* 291 Mass. 455, 460. *Pemberton Sq. Operating Co.* v. *Lydon,* 292 Mass. 63, 64. *Hopkinson* v. *First National Bank of Provincetown,* 293 Mass. 570, 573. The disallowed part of each claim amounted to $7,897.50.

The disallowed part of each claim consisted of the taxes which became due and payable to the city of New York on May 1, 1933, upon real estate in New York leased by the respective claimants to the corporation, which taxes the corporation by the respective leases had agreed to pay. In the lease given by Kaskel, the corporation agreed that it would "punctually pay and discharge all taxes" and "such taxes . . . shall be paid within sixty days after the same shall become due and payable. And it is further agreed that if any such amounts shall not be paid at the time or in the manner aforesaid the same shall be added to and become part of the month's rent next thereafter to become due and be collectible therewith, and that the landlord may pay the said amounts or any of them, in which event the amount so paid shall be repaid to the landlord by the tenant with interest within ten days of such payment, provided the same shall not theretofore have been paid with and as part of the rent; but the right of the landlord to recover said sum with and as part of said rent shall not be dependent upon his payment of the same." Rent under this lease was payable on the first day of each month in advance.

In receivership, claims, to be provable, need not be due or payable at the beginning of the suit. It is sufficient if the claim has "matured" at the date fixed as the last day for filing claims. *International Paper Co.* v. *Priscilla Co.* 281 Mass. 22, 36. By "matured," is meant become absolutely due, without contingency, although not necessarily liquidated nor presently payable. *Ellis* v. *Burnham*, 263 Mass. 57, 59–60. *Standard Oil Co. of New York* v. *Back Bay Hotels Garage, Inc.* 285 Mass. 129, 134–135. *Deane* v. *Caldwell*, 127 Mass. 242, 245. *Samuels* v. *E. F. Drew & Co. Inc.* 292 Fed. 734.

The receiver contends that, under the terms of the Kaskel lease, the failure to pay the taxes on May 1, 1933, did not give the landlord at once a matured claim, which became payable and upon which he could sue in sixty days. The receiver contends that the exclusive remedies of the landlord were to wait sixty days, and then either (a) treat the unpaid taxes as "added to and become part of the month's rent next thereafter to become due," or (b) pay the taxes and sue for them with interest at the end of ten days more. In the former alternative, no claim could be said to be matured on the crucial date, June 1, 1933, for the rent to which the unpaid taxes were to be added could not be any rent due before July 1, 1933. Whether any rent would become due July 1, 1933, could not be determined until that day. "Before the day at which rent is covenanted to be paid, it is in no sense a debt; it is neither *debitum* nor *solvendum*; for if the lessee is evicted before that day, it never becomes payable." *Deane* v. *Caldwell*, 127 Mass. 242, 244. *Bowditch* v. *Raymond*, 146 Mass. 109. *Towle* v. *Commissioner of Banks*, 246 Mass. 161, 167–168. *Security System Co.* v. *S. S. Pierce Co.* 258 Mass. 4, 5–6. In the latter alternative, payment of the taxes, which could not be made for sixty days or until about July 1, 1933, was a condition precedent to the creation of any cause of action. In either alternative, there would be no matured claim existing at the crucial date, June 1, 1933.

The decisive question therefore is, whether the remedies stated in the Kaskel lease were in truth exclusive, or, on

the other hand, the landlord was entitled to disregard those remedies and bring an action for breach of the agreement "punctually [to] pay and discharge all taxes." Since the lease was made in New York, with respect to land located there, it must be construed according to the law of New York. If the agreement had been merely to pay the taxes when due, it would have been broken as early as May 2, 1933, and the claim would have been "matured" and provable at that time. *Wall* v. *Hess*, 232 N. Y. 472. *Koshland* v. *American Woolen Co*. 289 Mass. 308, 311, and cases cited. In the present case the covenant "punctually [to] pay and discharge all taxes" did not stand alone, even with the addition that "such taxes . . . shall be paid within sixty days after the same shall become due and payable." There follows a provision that if not so paid the taxes "shall be added to and become part of the month's rent next thereafter to become due and be collectible therewith," whether the landlord has paid the taxes or not. If he does pay them, there is a further agreement by the tenant to repay him within ten days, unless in the meantime the taxes have been collected as part of the rent. We think that these provisions state the whole remedy for non-payment of taxes, and deprive the landlord of any right to bring an action on the covenant "punctually [to] pay and discharge all taxes," standing alone, either before or after the expiration of sixty days. The whole covenant was really an optional one, (1) to pay and discharge the taxes, or (2) to let them be added to the rent, or (3) if the landlord should pay them himself, to repay him within ten days. No action can be based upon the failure of the tenant to choose the first option, for it had a right to choose the second or the third instead. As has already been shown, no provable claim could arise under either the second or the third option. This construction of the lease finds support in the authorities in New York as well as in this Commonwealth. *Trinity Church* v. *Vanderbilt*, 98 N. Y. 170. *Welch* v. *Gordon*, 284 Mass. 485. In the case of *In re Sherwoods, Inc*. 210 Fed. 754, the point was apparently not raised or considered. Compare *Guild* v. *Sampson*, 232 Mass. 509, 514.

In the lease given by Browning, the corporation agreed that it would "pay and discharge all . . . taxes" and in default of payment "within thirty days after the same shall be levied or imposed or shall fall due" the landlord may pay them and the amount paid "shall be and become and hereby . . . [is] declared to be rent, and such rent shall be added to the rent becoming due on the first day of the next bi-monthly period, or on the first day of any subsequent bi-monthly period." Rent was payable bi-monthly on the first days of May and every second month thereafter. Under this lease, the addition of the taxes to the rent was not to take place unless and until the landlord should choose to pay the taxes. As early as May 2, 1933, a cause of action accrued to the landlord for breach of the covenant to "pay and discharge all . . . taxes." That cause of action continued to exist on June 1, 1933, the crucial date, and constituted a provable claim. That claim, in our opinion, was not destroyed by the act of the landlord in paying the taxes on November 17, 1933, long after the crucial date and after the rights of the parties in the assets had become fixed, even if the lease survived so long, which does not appear.

The exceptions of Kaskel are overruled, and those of Browning are sustained. The decree appealed from is to be modified by allowing the disallowed part of the Browning claim, and as so modified it is affirmed.

*Ordered accordingly.*