Shanley N. Egeth, J.
This is a nonpayment summary proceeding commenced by the landlord of loft premises seeking $4,533.29 in base rent; additional rent of $34.35 claimed to be due under a tax escalation clause; and the sum of $910.22 claimed to be due as additional rent pursuant to a rent escalation formula contained in paragraph 38 of the operative Standard Real Estate Board of New York loft lease. The tenant denied *260 that the additional rent sought is due pursuant to the appropriate lease provisions, and further asserted the affirmative defense of the pendency of another proceeding in bar of the instant one.
After conferences with the court the parties stipulated to agreed facts, to a resolution of some of the issues in the proceeding and to a referral to this court of the question of the legality and proper interpretation of clauses 38 and 39 of the lease. Pursuant to the stipulation the tenant paid the base rent due without prejudice, discontinued the prior pending proceeding and withdrew its affirmative defense asserted in its answer, and further agreed with the landlord to refer the question of entitlement to any additional rent to the court as a matter of law. It is conceded that if both disputed clauses are fully enforceable, the amount claimed by the landlord would be due.
. In essence the tenant asserts the following position concerning the lease provisions:
A. That paragraph 38 of the lease, entitled ‘ ‘ Rent Escalation — 'Cost increases ” imposes upon the tenant the obligation to pay only its pro rata formula share of the landlord’s actual liability for costs increases, for elevator operators.
B. Although the tax escalation clause in lease paragraph 39 is conceded to be valid, it is claimed that the landlord may only demand payment of moneys due thereunder on a quarterly basis, and only after the landlord becomes obligated to make payment to the City of New York of a particular quarterly tax installment.
At the request of the tenant, the landlord has stipulated to various specific facts which demonstrate that the increases sought to be collected under the cost increase clause, or which may become collectible thereunder, bear no direct relationship to reimbursement of the landlord’s actual expense for increases to elevator operators. In so doing the landlord concedes that the moneys due under application of the formula for the years 1971, 1972 and 1973 are more than that which the landlord expended in elevator operator increases, or perhaps even more than the landlord paid as elevator operator salaries for the year. It is further conceded that theoretically if each of the tenants in the building had the same clause (and percentage) in their leases, the landlord might receive in excess of 12 to 15 times the actual moneys expended in the 1972 calendar year for increases to its elevator operators.
Without specific reference to the actual text of either of the clauses, they are each subject to certain common general *261 principles which are determinative of their construction. Inasmuch as: this leasehold involves commercial rather than residential space; the terms were negotiated at arm’s length by parties who were sophisticated businessmen, and were represented by counsel throughout; the parties and their counsel scrutinized the entire document and caused each page to be initialed, this instrument is to be tested by application of clearly established, universally accepted rules of law. Unless a contract or legal document is ambiguous, illegal, against public policy, or otherwise unconscionable, or created by virtue of a fraud or mutual mistake, its clear terms are required to be enforced by a court. (Mosler Safe Co. v. Maiden Lane Safe Deposit Co., 199 N. Y. 479; Heller & Henretig v. 3620-168th St., Inc., 302 N. Y. 326; see 379 Madison Ave. Inc. v. Stuyvesant Co., 242 App. Div. 567, affd. 268 N. Y. 576 [re: public policy]; Hart v. City Theatres Co., 215 N. Y. 322 [re: illegality]; Brandwein v. Provident Mut. Life Ins. Co., 3 N Y 2d 491 [re: fraud and mistake]; Rosenthal v. American Bonding Co of Baltimore, 207 N. Y. 162 [re: ambiguity]; Tai On Luck Corp. v. Cirota, 35 A D 2d 380, app. dsmd. 29 N Y 2d 747; 57 E. 54 Realty Corp. v. Gay Nineties Realty Corp., 71 Misc 2d 353 [re: unconscionability].)
Upon analysis, each of the clauses is sufficiently clear and unambiguous, consistent with public policy and substantially free from the taint of unconscionability, as to require judicial enforcement or implementation of the express negotiated terms contained therein.
Paragraph 39 of the lease (Bent Escalation — tax increases) is one variant of the common commercial lease provision requiring a tenant to pay a negotiated portion of the landlord’s obligation for tax increases. The language utilized must clearly fix the time when the obligation incurred thereby becomes payable. The pertinent sentence of this clause reads “ Such additional rent shall he paid when the tax becomes fixed and within [10] days after demand therefor by the landlord and shall be collectible as rent This language is commonly used in many leases. It is simple, unambiguous and clear. It raises no problems as to legality, public policy or equity.
The tenant’s contention that a changeover by the City of New York from a semiannual to quarterly requirement for installment tax payments should compel a change in a tenant’s obligations for payment under this clause is wholly without justification or judicial sanction. The clause provides for a single payment even though the landlord paid taxes in installments when *262 the lease was executed. It is not phrased to provide for reimbursement to the landlord only after actual payment of taxes is made, but merely requires payment to the landlord after proper notice of the amount of the tax indebtedness. This is clearly authorized, and consistent with the law of this State as enunciated by the Court of Appeals in the leading case of Wall v. Hess (232 N. Y. 472 [1922]). In holding a tenant liable to pay its share of tax increases for a tax period extending bqyond the expiration of the tenant’s lease term, the Court of Appeals ruled that the operative condition creating the tenant’s obligation was the express language of its lease.
The landlord having made timely demand for the payment of $368.75 as additional rent in accordance with the provisions of paragraph 39, the tenant is presently liable for the payment thereof.
The same principles which were utilized in establishing the legal efficacy of paragraph 39 of this lease are equally determinative of paragraph 38.
These principles compel a similar determination of validity and enforceablility of paragraph 38. Notwithstanding the fact that this clause is lengthy, complex or intricate in language or content, a construction of vagueness, ambiguity or invalidity by a court would be unwarranted for such reasons. It is the court’s impression that this clause is nothing more than a differently phrased method of inserting a cost of living rent adjustment provision in this lease. Such clauses are common in nonresidential leases.
This particular clause is not intended to provide specific reimbursement to the landlord from the tenant of enumerated actual costs in the operation of the building. The clause is not illegal, violative of public policy or unconscionable. Therefore, its clear unambiguous provisions should be enforced.
The type of standard employed in this clause has been used extensively in many of the prevalent form leases. A variant, substantially similar to it was recently upheld by Judge Charles Gold of this court (Princess Togs Realty Co. v. Lazerson Bros., Civ. Ct. of City of New York, Index No. 104166/1971).
The language and reasoning of Judge Gold’s decision which analyzes and upholds this kind of clause is cogent and persuasive. His opinion in the Princess Togs case reads in part, as follows:
8 8 The court fails to find any ambiguities present in article 39 [equivalent to article 38 herein]. Thus the familiar rule, that where there is an ambiguity present it must be construed most *263 strongly against the party who prepared the document, does not come into play.”
“ The court finds that article [38] presents a formula which the parties intended would he operative and would escalate the rent upon the happening of a certain prescribed event, namely the increase of the elevator operators’ hourly rate of wages in buildings of a certain class. This event occurred. Article [38] is merely a barometer chosen by the parties much equivalent to the cost of living index which is frequently utilized by contracting parties as a means of adjusting their obligations to each other * * * If the tenant was not agreeable to this standard he was privileged to reject it.”
“ A rent increase arrived at by this formula does not necessarily betoken a windfall for the landlord for the reason that the wage increase underlying the aforesaid barometer is itself arrived at by referring to such considerations as increases in the cost of living and in the cost of doing business.”
This court agrees with Judge Gold’s interpretation of this clause. Upon the basis of the Princess Togs case (supra), and the authorities relied upon herein, the tenant is required to pay the previously stipulated sum of $910.22 as additional rent pursuant to paragraph 38 of the lease herein. „
Final order, and judgment in the sum of $1,278.97, for landlord after trial. "Warrant stayed for 10 days following service of a copy of this decision with notice of entry.