James **BLOOR**, as Reorganization Trustee of Invesco Holding Corporation, Plaintiff,

v.

**CHASE MANHATTAN MORTGAGE AND REALTY TRUST**, Stevens & Edwards, Inc., W. G. Management Co., Rubin Garfinkel and Albert Wohl, Defendants.

No. 78 Civ. 1996.

United States District Court, S. D. New York.

March 13, 1981.

---

Golenbock & Barell, Arthur M. Handler, Stephen M. Rathkopf and by Alan D. Scheinkman, New York City, for plaintiff.

Olshan, Grundman & Frome by Richard Abelson, New York City, for defendants.

## MEMORANDUM and ORDER

WHITMAN KNAPP, District Judge.

Plaintiff James Bloor, Reorganization Trustee of Invesco Holding Corporation (the "trustee"), moves for summary judgment on the First Claim for Relief stated in his complaint against defendant Chase Manhattan Mortgage and Realty Trust ("Chase REIT") for breach of a lease agreement. We grant that motion.

### The Facts

The trustee was the fee owner of certain improved real property located at 315 West 57th Street and 330 West 58th Street, New York, New York (the "premises"). Commencing in 1961, these premises were subject to a ground lease made between plaintiff's predecessor in interest as landlord, and Hyman and Irving Shapiro as tenants. The ground lease was a complicated document with fifty-two separate provisions, only three of which are relevant here.

Article Third of the ground lease provided for payment by the tenant to the landlord of all real estate taxes and water and sewer charges assessed against the premises at or after the date of the lease or during any renewal thereof. These payments, denominated "additional rent," were to be

made "at least five days before the said payments shall be due without penalty."[1]

Article Seventeenth of the ground lease provided that a default in payment of additional rent for ten days after such rent became due and payable would constitute a default by the tenant and a breach of the lease.

Article Fiftieth dealt with what would happen in the event of an assignment. Pursuant to this provision, an assigning tenant was relieved of all contractual liability under the lease "except for payment of the net rent and additional rent ... due and payable to the date of the [assignment]." Upon a valid assignment or transfer in whole of a tenant's interest under the ground lease, Article Fiftieth provided, in addition, that "the term 'tenant' as used in this lease [would] thereafter mean only the assignee or transferee thereof."

In 1971, the Shapiros mortgaged their interest under the ground lease to Chase REIT. On July 15, 1976, Chase REIT accepted an assignment of the ground lease from the Shapiros and took possession of the premises. On September 28, 1976 water and sewer charges in the amount of $1,900.17 were assessed against the premises by the City of New York, and on October 1, 1976, an installment of real estate taxes in the amount of $125,328.75 was assessed against the premises by the City of New York. At this time, New York City provided a 30-day grace period for payment without penalty of water and sewer charges and of real estate tax installments.

On October 29, 1976, Chase REIT purported to assign all of its interest in the premises to Stevens & Edwards, Inc. ("Stevens & Edwards") and ceased making rental payments. Neither Chase REIT nor Stevens & Edwards paid the September 28, 1976 water and sewer charges or the October 1, 1976 real estate tax installment.

Thereafter, having been notified by the first mortgagee that it would act to protect its interests unless all real estate taxes were brought current within ten days, plaintiff authorized its agent to pay the October 1, 1976 real estate tax installment, together with interest, from amounts that had been collected by such agent for plaintiff. On December 6, 1977 plaintiff sold the premises. Pursuant to the contract of sale, the purchaser paid the September 28, 1976 water and sewer charges with interest through December 6, 1977 out of the sale proceeds due plaintiff.

Plaintiff now moves for summary judgment against Chase REIT for the amounts expended in payment of the September 28, 1976 water and sewer charges and the October 1, 1976 real estate tax installment.

*Discussion*

On January 17, 1979 we rendered an opinion in this action deciding a summary judgment motion by defendant Chase REIT. We there held that, because Chase REIT never contracted to assume any of the tenant's liabilities when it entered into possession of the premises, there was no privity of contract between it and the trustee. The trustee could prevail, therefore, only to the extent that it was able to establish liability under the doctrine of privity of estate.

That doctrine provides that a mortgagee who accepts assignment of a lease and thereafter enters and assumes possession of the premises becomes liable for rent accruing during his possession and for all "covenants in the original lease which run with the land." *Century Holding Co. v. Ebling Brewing Co.* (App. Term, 1st Dept. 1917), 98 Misc. 226, 162 N.Y.S. 1061, 1064 (App. Term, 1st Dept. 1917) 167 N.Y.S. 52, (1st Dept. 1918) 185 App.Div. 292, 173 N.Y.S. 49, quoting *Stewart v. Long Island R.R. Co.* (1886) 102 N.Y. 601, 8 N.E. 200. Liability, however, may be terminated by assignment of the lease to any third party "together with the note for which the lease was security." 162 N.Y.Supp. at 1065. For present purposes we may assume—despite the trustee's contention to the contrary—that the assignment to Stevens & Edwards was valid and not a sham.

---

1. We interpret this language—as have the parties—to mean at least five days before the last day on which payment could be made without penalty.

It is clear that the obligation to pay the September 28, 1976 water and sewer charges and the October 1, 1976 real estate tax installment accrued prior to the purported assignment to Stevens & Edwards on October 29, 1976. Article Third of the ground lease obligates the tenant to pay all such charges assessed during the term of the lease. Under New York law such clauses are strictly construed. In *Wall v. Hess* (1922) 232 N.Y. 472, 134 N.E. 536, the leading case on the question, the tenant had covenanted to pay "when due and payable or within sixty days thereafter" all taxes assessed against the premises during the term of the lease. The court held that this covenant encompassed even those taxes assessed during the term which had not become payable until after the lease had expired:

"The obligation of this defendant was to pay all taxes that might be assessed, levied, or imposed against the premises during the term. No escape is possible from the conclusion that the taxes . . . were finally and unalterably fixed and imposed against the demised premises during the term of the lease, although not payable until after the expiration of such term."

The same analysis controls here. The charges in question being finally and unalterably fixed on September 28 and October 1, respectively, they accrued on those dates. Accordingly, the purported assignment to Stevens & Edwards on October 29 could not relieve Chase REIT of liability therefor under the pure doctrine of privity of estate.

Defendant contends, however, that Article Fiftieth and Seventeenth of the ground lease modify this common law rule. It is true that Article Fiftieth would vary the *Wall v. Hess* rule by relieving the assignor of liability with respect to taxes which, though assessed, had not become "payable" on the date of assignment. However, the difficulty with defendant's position is that each of the taxes here at issue had in fact become payable before that date. Under the terms of the ground lease, payments were to be made at least five days before they were due without penalty. At the time in question, New York City provided a 30-day grace period,

after which a penalty would be imposed. Accordingly, the fifth day before the payments became due without penalty occurred, in the case of the water and sewer charges, on October 23 and, in the case of the tax installment, on October 26.

Nor does Article Seventeenth provide Chase REIT with a defense. That Article merely protects a tenant from having the lease declared in default for a grace period of ten days *after* additional rent becomes "due." It does not purport to affect Article Fiftieth's specification that the tenant may avoid liability only by assigning *before* it becomes due and payable.

In summary, we conclude that the obligation to pay the September 28, 1976 water and sewer charges and the October 1, 1976 real estate tax installment accrued during the time Chase REIT was mortgagee in possession of the premises, and that Chase REIT is not relieved of liability therefor by any provision of the ground lease. We therefore grant summary judgment for the trustee as to the First Claim for Relief.

The trustee may submit a partial judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure. Although such a judgment would not completely dispose of this action, we do not feel that any questions that might be raised on an appeal from such a judgment would be pertinent to the remaining claims. Moreover, to the extent that there might be duplication of judicial effort, such duplication seems warranted by the necessity of this case. We are dealing with a trustee appointed by this court whom we have found to be entitled at least to the funds hereby awarded. In view of the interest rates now prevailing it seems to us that he, and not the defendant, should be entitled to the use of these funds while the remaining issues are addressed. We therefore find that there is no just reason for delay. Let the trustee submit an appropriate judgment.

SO ORDERED.